CHRYSLER CORPORATION, Plaintiff,

v.

AIRTEMP CORPORATION, Defendant.

Superior Court of Delaware,
New Castle County.

Submitted July 10, 1980.
Decided Nov. 20, 1980.

Michael D. Goldman and Sue L. Robinson, Potter, Anderson & Corroon, Wilmington, and William C. Heck (argued), Kelley, Drye & Warren, New York City, for plaintiff Chrysler Corp.

Paul P. Welsh, of Morris, Nichols, Arsht & Tunnell, Wilmington, for defendant Airtemp Corp.

TAYLOR, Judge.

## I.

Plaintiff, Chrysler Corporation [Chrysler] seeks to recover $5,237,827.23 in one claim or $8,000,000 in another claim from defendant Airtemp Corporation [Airtemp] for services allegedly furnished by Chrysler to Airtemp.

Airtemp has moved to dismiss the complaint contending that it fails to state a claim upon which relief can be granted and fails to join Fedders Corporation [Fedders] as a defendant under the requirements of Civil Rule 19. Alternatively, Airtemp seeks a stay of this action pending the determination of a related action by Chrysler against Fedders in the United States District Court for the Southern District of New York.

Chrysler has moved for partial summary judgment against Airtemp. Since Airtemp has filed evidentiary material in connection with its motion to dismiss, that motion will also be treated as a motion for summary judgment. Superior Court Civil Rule 12(b)(6).

In an earlier Letter Opinion, this Court determined after assessing Rule 19 requirements that although Fedders is a party which should be a participant in this suit, dismissal for nonjoinder was not warranted but that alternatives be explored in lieu of Court imposed dismissal or stay. Specifically, the Court suggested either that this action be stayed until the right of Chrysler to pursue its claim against both Airtemp and Fedders in other pending litigation was resolved or that Fedders voluntarily intervene in this suit. Since neither of these alternatives has been accomplished within the time limit set by the Court, the Court herein will decide Airtemp's motion to dismiss, which will be treated as a motion for summary judgment, and, Chrysler's motion for summary judgment.

## II.

In 1976 Chrysler and Fedders entered into a contract, hereinafter referred to as "Agreement", whereby Fedders agreed to purchase most of the assets of Chrysler's Airtemp Division. To effectuate the transfer of these assets, Fedders created Airtemp, its wholly-owned subsidiary. Pursuant to Fedders' instruction, Chrysler executed a "Bill of Sale and Assignment" transferring the assets to Airtemp. In order to provide continuity during the transfer period, the contract provided that Chrysler would for a period of up to nine months render the same services which it previously furnished to its Airtemp Division, for which services Fedders agreed to pay Chrysler or cause payment to be made. The complaint alleges that Chrysler ren-

dered such services and seeks payment for those services from Airtemp, the recipient of the services. The complaint seeks payment from Airtemp for the services described above based on account annexed, account stated, book account and quantum meruit.

### III.

■ Turning to the "account" theories which Chrysler asserts, "account" is defined as:

> "an unsettled claim or demand by one person against another, based upon a transaction creating a debtor and creditor relation between the parties which is usually but not necessarily represented by an ex parte record kept by one or both of them." 1 *Am.Jur.2d* Accounts and Accounting § 1.

In the case of an unqualified allegation of account, the rights of the litigants turn upon the existence or non-existence of an underlying transaction whereby a defendant owes money to a plaintiff. 1 *C.J.S.* Accounts 15, p. 604; *Star Steel Supply Company v. White*, 4 Mich.App. 178, 144 N.W.2d 673 (1966); *Telefunken Sales Corp. v. Kokal*, 51 Wis.2d 132, 186 N.W.2d 233 (1971). "Account" is a common law form of action by which a claim may be pursued. 2 *Woolley on Delaware Practice* § 1460, p. 985, § 1466, p. 988, § 1523, p. 1032.

Although it had the benefit of a particular procedure by which the matter would be pursued in court, the rights of the litigants rest upon the existence or non-existence of a transaction whereby a defendant owes money to a plaintiff. Where the existence of the account was disputed, the traditional burden of proof rested upon plaintiff to prove the account, the underlying transaction and debt, and if plaintiff failed in its proof or defendant prevailed in its contrary proof thereof the suit, regardless of its nomenclature, must fall. Ibid.

One ground upon which Chrysler seeks recovery is "account annexed". From an examination of the landmark treatise on the subject of Delaware practice by Judge Woolley it appears that this term did not have a special significance in Delaware.

Apparently it has been given special treatment by statute in some states. 1 *C.J.S.* Account, Action On § 8, pp. 588–596. Since this is not true in Delaware, Chrysler's case must turn on the existence of an agreement or debt on which the account is founded and the propriety of the charges shown in the account. 1 *C.J.S.* Account, Action On § 15, p. 604.

■ Chrysler also bases its claim upon "book account". A "book account" has been defined as "a detailed statement, kept in a book, in the nature of a debit and credit, arising out of contract or some fiduciary relation . . .". 1 *C.J.S.* Account at 574 (1936). See also 1 *Am.Jur.2d*, supra § 3. A claim based on book account entitles a claimant to a certain procedural advantage, 10 *Del.C.* § 3901, which is not of concern here. But the mere fact that a plaintiff carries a claim on its books does not alone establish liability on the part of defendant. If Airtemp properly opposes it, the claim must be established according to the same standards applicable to other suits, namely, by a showing that the transaction between the parties entitles plaintiff to recover. 2 *Woolley on Delaware Practice* § 1468, p. 990; *Bloom v. Handloff*, Del.Super., 97 A. 586 (1916); *A. H. Davenport Co. v. Addicks*, Del.Super., 57 A. 532 (1904); *Steel v. Yeatman*, Del.Super., 5 Harr. 267 (1850). All of the elements essential to a contract must exist in order to permit recovery. Ibid.

Chrysler also asserts its claim as an "account stated". 2 *Woolley on Delaware Practice* § 1460, p. 985 states:

> "[a]n account stated is an agreement by both parties that all the items [stated in the account] are true . . . No recovery can be had under an account stated, unless there was an account agreed upon between the parties, by which the person said to be charged, stated, or admitted a certain sum to be due and owing from him to the other. In the absence of such proof no recovery can be had under the count of account stated, and the plaintiff is put to the proof of the items of his account."

■ An agreement constituting an account stated must be subsequent to the creation of the debt. It must be an agreement by the debtor that the debtor owes a certain sum and there must be a valid underlying indebtedness upon which the account stated rests. 1 *Am.Jur.2d* Accounts and Accounting § 21, pp. 395–7; *Restatement of Contracts* § 422(1).

■ The sufficiency of consideration to support an account stated "rests solely upon the pre-existing debt, commonly called a 'past consideration'." 6 *Corbin on Contracts* § 1304, pp. 237–8; 15 *Williston*, Contracts (3d ed.) § 1864, pp. 578–9. Since the function of an account stated is to resolve or consolidate prior transactions, the parties to the account stated must be the same as the parties to the underlying transactions. 1 *Am.Jur.2d* Accounts and Accounting § 22, p. 397; *Shea v. Kerr*, Del.Super., 1 Penne. 198 (1898); See Annotation 6 *A.L.R.2d* 118–120.

The amended complaint asserts with respect to the account stated claim that:

"Chrysler at the request of C–A–T Airtemp, performed certain services for C–A–T Airtemp," and

"C–A–T Airtemp received invoices from Chrysler for such services, periodically reviewed the charges and credits for an [sic] in connection with such services and agreed and acknowledged that C–A–T Airtemp owed Chrysler a balance of at least $5,237,827.23 by reason of Chrysler's performance of such services." [1]

Based upon the authorities cited above, the validity of the alleged account stated agreement between Chrysler and Airtemp must turn on whether Airtemp had an underlying liability to support the account stated.

In summary, all of the "account" claims turn upon whether Airtemp had a contractual obligation to pay Chrysler for these services.

## IV.

I pass to the question of whether under the amended complaint and the evidentiary material which has been supplied in connection with the motions of Chrysler a valid contractual obligation exists on the part of Airtemp to pay Chrysler for this claim.

Airtemp contends that the services for which Chrysler seeks compensation in this suit were simply the services which Chrysler was obligated to perform under the Agreement between Chrysler and Fedders referred to above and that the liability for those services rests with Fedders and not with Airtemp. Airtemp was not a party to that Agreement. Airtemp's reasoning is that if Airtemp was entitled to receive these services from Chrysler by virtue of the Chrysler-Fedders Agreement, any subsequent promise by Airtemp to pay Chrysler could not constitute consideration for a direct contractual relationship between Chrysler and Airtemp which would support an undertaking by Airtemp to Chrysler to pay for those services, and hence even if Airtemp made a promise to Chrysler to pay for the services, such promise is not binding because it lacked consideration.

Two provisions of the Chrysler-Fedders Agreement bear consideration.[2]

1. The corporate name "C–A–T Airtemp" or "Worldwide C–A–T– Corporation" was changed to Airtemp Corporation. The name "Airtemp" as used in this Opinion is used without distinction to refer to all of those entities as the context may require.

2. "1.5.1 The provisions of this Agreement are for the benefit of FEDDERS and CHRYSLER. They are not intended to and do not give rise to any benefit to any third party not a party to this Agreement (*other than subsidiaries of FEDDERS or CHRYSLER, as the case may be, as expressly provided in this Agreement*). No such third party shall have any right to sue hereunder nor have any rights of any kind or nature." (Emphasis added).

"16.6 *Assignments.* This Agreement and/or *the Assets being sold* and/or the Disclosed Liabilities being assumed hereunder *or any part of the foregoing, may be assigned without CHRYSLER'S consent by FEDDERS to a corporation or corporations, existing or to be organized, and the covenants, representations, warranties, and indemnities of CHRYSLER shall apply to such assignee(s) was the purchaser hereunder provided*, however, that any such assignment shall not release or discharge FEDDERS from its obligations or liabilities

Section 1.5.1 excludes third-party benefits generally, but removes from that exclusion "subsidiaries of Fedders or Chrysler, as the case may be, as expressly provided in this Agreement". The inference from this language is that such subsidiaries are third-party beneficiaries under the Agreement.

The record indicates that the assets which were the subject of the Fedders-Chrysler Agreement were assigned by Fedders to Airtemp and that Airtemp is a wholly-owned subsidiary of Fedders. Chrysler contends that Airtemp is not a third-party beneficiary under the contract. First, Chrysler contends that since Airtemp's existence pre-dated the Agreement and the Agreement did not expressly refer to Airtemp as third-party beneficiary, it cannot have that status. *Hylte Bruks Aktiebolag v. Babcock & Wilcox Co.*, 2 Cir., 399 F.2d 289, 292 (1968), which Chrysler relies upon for the above proposition states that the Agreement must either show that the Agreement was "entered into for [the benefit of the third party], or at least such benefit must be the direct result of performance and so within the contemplation of the parties". *Hylte* recognizes that if the above requisite is met a third-party beneficiary status may exist "even though the Agreement may not specifically identify the party and even though the party is not then in existence." This same principle was accepted by this Court in *Oliver B. Cannon & Sons, Inc. v. Dorr-Oliver, Inc.*, Del.Super., 312 A.2d 322 (1973). I do not find that the fact that Airtemp's existence pre-dated execution of the Agreement by a few days prevents it from third-party beneficiary status if it otherwise qualifies.

In this instance the Agreement shows an intention to bar third-party beneficiary rights except with respect to "subsidiaries of Fedders or Chrysler ..., as expressly provided in this Agreement." Conversely, "subsidiaries of Fedders or Chrysler ..., as expressly provided in this Agreement" may be third-party beneficiaries under the Agreement.

Defendant contends that the phrase "as expressly provided in this Agreement" refers to subsidiary corporations or affiliates of Chrysler which supplied parts for Chrysler's non-automotive air conditioning business whose stock was treated under the Agreement as assets being sold to Fedders. According to defendant, certain foreign subsidiaries of Chrysler were referred to in the Agreement as "deferred closing subsidiaries" whose stock was to be transferred as of a "deferred closing date". Chrysler's contention that the subsidiaries which are entitled to third-party beneficiary status under Section 1.5.1 are Chrysler's subsidiaries whose stock was to be transferred to Fedders overlooks that fact that Section 1.5.1 refers to subsidiaries of Fedders as well as those of Chrysler. While it is true that those Chrysler subsidiaries were to be transferred to Fedders, the transfer was not to occur until the final consummation of the Agreement, which is referred to in the Agreement as "Deferred Closing Date". The Agreement refers to those Chrysler subsidiaries as "Deferred Closing Subsidiaries" and provides for the transfer of their stock to Fedders at the Deferred Closing Date. Hence, during the period when rights were accruing under the Agreement, those subsidiaries were Chrysler's subsidiaries and not Fedders'. If the agreement had intended to limit third-party beneficiary rights under Section 1.5.1 as contended by Chrysler, a specific reference by the name used elsewhere in the Agreement, namely, Deferred Closing Subsidiaries rather than the phrase "as expressly provided in this Agreement" would have sufficed, and no reason for the use of such imprecise language in its place has been given. Furthermore, it has not been contended that the negotiations indicated an intention of the parties to restrict the meaning of Section 1.5.1 in that manner.

On the other hand, third-party beneficiary status under Section 1.5.1 does not

hereunder. No other assignment shall be permitted without the consent of the parties to this Agreement. *This Agreement shall be binding*

*upon and inure to the benefit of the successors and assigns of the respective parties hereto."* (Emphasis added).

extend to all Fedders and Chrysler subsidiaries. Therefore, it is necessary to look to some provision other than Section 1.5.1 to determine what subsidiaries of Fedders are entitled to third-party beneficiary treatment. It has been noted above that Section 16.6 specifically deals with the right of Fedders to Assign assets being sold under the Agreement "to a corporation or corporations, existing or to be organized". By virtue of that section "such assignee" is entitled to the benefit of the covenants, representations, warranties and indemnities of Chrysler "with the same force and effect as though such assignee was the purchaser hereunder". The assignment clause neither limits the assignees to corporations which are owned in whole or in part by Fedders nor excludes corporations owned by Fedders. Therefore, a corporation, such as Airtemp, which is a wholly-owned subsidiary of Fedders is entitled to the benefits of Section 16.6. I conclude that a subsidiary of Fedders which is an assignee of assets sold under this Agreement is a subsidiary which is "expressly provided in the Agreement" by virtue of Section 16.6, and therefore it is a recognized third-party beneficiary under Section 1.5.1. Under the evidentiary material supplied, Airtemp meets that test.

In addition to the general language of Section 1.5.1 concerning third-party beneficiaries Section 16.6 contains language which specifically describes the status of an assignee of the assets with respect to Chrysler's contractual obligation, namely, that they "shall apply to such assignee with the same force and effect as though such assignee was the purchaser hereunder". This language places the assignee in the same position as the purchaser insofar as the obligations of Chrysler are concerned. It does not provide similarly with respect to the obligations of Fedders. The inference from the absence of such reciprocal language is that the liabilities were not intended to extend to the assignee. Chrysler's rights in the event of assignment by Fedders are protected in this sentence by the proviso that "any such assignment shall not release or discharge Fedders from its obligations or liabilities hereunder". While this is merely declarative of the general law of assignment, 6 *Am.Jur.2d* Assignments § 110, p. 293, it indicates that attention was directed to the subject of liability to Chrysler in the event of assignment and only Fedders specifically was made liable if an assignment occurred.

Troublesome to the above analysis is the final sentence of Section 16.6 which provides:

"This Agreement shall be binding upon and inure to the benefit of the successors and assigns of the respective parties hereto".

If, as contended by Chrysler, this clause was intended to mean that every assignee, whether an assignee of the entire Agreement or of a part of the Agreement or of assets involved in the Agreement, would have the same rights and liabilities as Fedders, there would have been no need for the language discussed above which defined the rights of assignees specifically and preserved the liability of Fedders in the event of assignment. I conclude at least insofar as the specific language deals with assignment of assets that language and the exclusionary inferences therefrom control over the general language dealing with successors and assigns the general language which applies where the entire Agreement is assigned. *Stasch v. Underwater Works, Inc.*, Del.Super., 158 A.2d 809 (1960).

The sections of the Agreement under which Chrysler rendered the services for which it is suing refer to the manner of payment for the services. They provide that "Fedders agrees to pay, or cause to be paid," for the services rendered by Chrysler. This language contemplates that Chrysler will look to Fedders for payment and that any alternative source of payment rests with Fedders to provide an alternative effective source of payment. Both this language and the language of Section 16.6 indicate an intention that the source of payment to which Chrysler was intended to look was Fedders.

Fedders did not directly receive the assets which Chrysler was obligated to transfer.

Instead, Fedders at the time of execution of the Agreement directed that Chrysler transfer "all of the Assets . . ., except for all trademarks, patents and patent applications . . ." to Airtemp. Fedders directed that the trademarks, patents and patent applications were to be transferred to Fedders. Chrysler complied by executing a bill of sale transferring the assets to Airtemp. Fedders did not assign the Agreement or its interest in the Agreement to Airtemp. I find no basis for the Court to treat the assignment of the assets as though it was an assignment of the Agreement as a whole. Therefore, even if the quoted language made the Agreement binding upon an assignee of the entire Agreement, it does not follow that an assignee of only part of the Agreement or of the assets involved in the Agreement would become liable for the obligations under the entire Agreement. Even if the quoted language were to be construed to create an implied obligation on the assignee to perform the assignor's obligations under the Agreement by accepting the assignment of the Agreement, no such implied obligation arises from accepting assignment of assets covered by the Agreement.

It is noted that 1 *Restatement of Contracts* § 164 provides that an assignment and acceptance thereof of a "whole contract" is interpreted as an assumption by the assignee of the assignor's duties under the assigned contract, in the absence of circumstances showing a contrary intention. By its terms, this section is limited to assignment of a "whole contract". Moreover, Professor Corbin, at 4 *Corbin on Contracts* § 906, pp. 626–31, discusses the concepts applicable in this area of the law and concludes that § 164 is inapplicable where the assignment merely covers the assignor's right against the other party to the underlying contract. Hence, the transaction involved here does not fall within the presumptive assumption of obligations contemplated by 1 *Restatement of Contracts* § 164.

Professor Corbin discusses the general question of whether an assignee by accepting assignment undertakes to perform the duties of the assignor. 4 *Corbin on Con-*

*tracts* § 906, p. 627. According to the reasoning of Professor Corbin the liability of the assignee for performance of obligations of the assignor under the underlying contract between the assignor and the other party to the underlying contract is dependent upon the assignment contract between assignor and assignee. If the assignee has contracted to perform the assignor's duties under the underlying contract the assignee may be liable to the assignor and also to the other party to the underlying contract as third-party beneficiary under the contract of assignment. On the other hand, "[i]f he has not so contracted, no action can be maintained against [the assignee], either by the assignor, or by the third party as a beneficiary". Ibid. This principle was recognized and followed by this Court in *Bryant, Griffith & Brunson v. General Newspapers*, Del.Super., 178 A. 645 (1935) which held that the transfer of assets from one corporation to another did not make the receiving corporation liable for debts of the transferring corporation if the transaction did not constitute a fraudulent conveyance. Applying this principle to the present case, Chrysler would have a right of action against Airtemp as assignee of Fedders only if Fedders had such a right of action against Airtemp arising out of the agreement of assignment. Chrysler does not contend that it is entitled to recover from Airtemp by virtue of contractual relationship between Fedders and Airtemp. Hence, in the absence of a showing of an undertaking by Airtemp to assume Fedders' obligation to Chrysler or to relieve Fedders of its obligation to Chrysler, the Court will not imply such an undertaking.

■ I conclude that Airtemp is an assignee of assets under the Agreement and as such it was entitled to the covenants, representations, warranties and indemnities of Chrysler and that it was a third-party beneficiary under the Agreement and that Airtemp did not expressly, or by receiving the assets from Chrysler, assume Fedders' liability under the Agreement.

■ Since Chrysler was obligated under the Agreement to render the services and since Airtemp was a creditor or donee third-party beneficiary of the services the question is whether any independent agreement between Airtemp and Chrysler after the transfer of the assets for Airtemp to pay for the services was enforceable. Chrysler was under a pre-existing duty to perform the services for the third-party beneficiary and Airtemp had a right to enforce that duty. *Wilmington Housing Authority v. Fidelity & Deposit Co.*, Del.Supr., 47 A.2d 524 (1946); *Oliver B. Cannon & Son, Inc. v. Dorr-Oliver, Inc.*, Del.Supr., 336 A.2d 211 (1975).

## V.

Chrysler cites *Restatement of Contracts* § 84(b) in support of the proposition that a promise to perform a pre-existing duty may be sufficient consideration to bind a new agreement even though the promisor may be bound contractually to a third person to perform the act which it now promises. This same proposition is found in *Restatement of Contracts Second*, Tentative Drafts 1–7 (1973) § 76A. Comment d to § 76A, 1 *Restatement of Contracts* clarifies the meaning of § 84(b) by stating that the pre-existing duty can be consideration "if the duty is not owed to the promisor". In other words, Chrysler's contractual duty to Fedders may be consideration for Airtemp's promise to pay Chrysler for the services if Chrysler had no prior duty to Airtemp to render the services. Professor Corbin analyzes the applicability of *Restatement of Contracts* § 84(d) in 1A *Corbin on Contracts* § 176, p. 125 and finds support for the proposition because "the promisor gets the exact consideration for which he bargains, one to which he previously had no right and one that he might never have received". Thus, in order to come within this concept the new promise must be from one who previously had no right to performance by the other party. Conversely, the concept does not apply if the new promisor had a right to performance without the intervention of the new promise. Here, the alleged new promise was made by Airtemp to Chrysler when Airtemp had a right as third-party beneficiary and assignee to receive performance from Chrysler.

■ Chrysler contends that the requirement for consideration for Airtemp's alleged promise to pay is met in this case because Fedders failed to make timely payment for the services. Chrysler's position is that when Fedders failed to pay for the first services within ten days, as required by the Agreement, Chrysler had no obligation to provide further services, citing *Restatement of Contracts* § 269, *Restatement of Contracts Second*, Tentative Draft # 8, § 262, and *Guerini Stone Co. v. P. J. Carlin Construction Co.*, 248 U.S. 334, 39 S.Ct. 102, 63 L.Ed. 265 (1919). In that event, according to Chrysler, Airtemp had no enforceable third-party beneficiary right to further performance by Chrysler. Chrysler's position is that Chrysler's duty to perform was doubtful and the subject of honest and reasonable dispute and this provided the requisite consideration to bind Airtemp's promise to pay, citing *Restatement of Contracts* § 76. Upon the present state of the record, the Court cannot hold that this proposition is lacking in merit. Since the issue of whether or not Chrysler is entitled to recover against Airtemp based upon an express contract has not been resolved herein, it cannot be said at this stage that the alternative relief discussed in this section cannot to pursued.

## VI.

Chrysler also contends that it is entitled to recover from Airtemp for the services which it rendered and Airtemp received, based upon the theory of quantum meruit or contract implied in law. Chrysler's discussion of this cause of action deals with both the theory of quantum meruit or contract implied in law and the theory of restitution. These theories rest upon different concepts of law. Apparently without differentiating between the two theories, Chrysler indicates that this cause of action is an alternative claim to its claim based upon the theory of actual contract or a

theory of account or account stated. With respect to the theory of quantum meruit or contract implied by law, courts of this State have long recognized that recovery on such a theory will be considered only if it is determined that the relationship of the parties is not governed by an express contract. *Bellanca Corporation v. Bellanca*, Del.Supr., 169 A.2d 620 (1961); *Dorsey v. State ex rel. Mulrine*, Del.Supr., 301 A.2d 516 (1972); *Trincia v. Testardi*, Del.Ch., 57 A.2d 638 (1948); *Schwob v. International Water Corporation*, D.Del., 136 F.Supp. 310 (1955).

If it is determined that the relationship of the parties and the services involved in this claim are the subject of an express contract, the terms of that contract control and there is no occasion to pursue the theory of quantum meruit or contract implied in law. Chrysler acknowledges that this principle applies between contracting parties, but contends that it is not applicable in the case of a third-party beneficiary, citing *De-Gasperi v. Valicenti*, 198 Pa.Super. 455, 181 A.2d 862 (1962). *DeGasperi* involved the construction of houses on land owned by the defendant pursuant to an arrangement made between plaintiff and defendant's husband. The Court held that both husband and wife were liable for the cost of construction based upon testimony which the Court found showed "that a family arrangement" existed with respect to the property and the bank account from which payments on the contracts were made. While earlier discussion in the Opinion deals with the subject of quasi contracts and contracts implied in law and unjust enrichment, the description of the relationship of the parties indicates that the case turned upon the question of what in substance was a joint venture and not upon a strict application of the legal principles discussed above. The Pennsylvania Superior Court in *Roman Mosaic and Tile Co., Inc. v. Vollrath*, 226 Pa.Super. 215, 313 A.2d 305, 307 (1973), pointed out that the significant factor in *DeGasperi* was the "family arrangement" and not merely the fact that a benefit was conferred on the wife through plaintiff's efforts. *Vollrath* recognized that where a contract exists "no person can be sued for

breach of contract who has not contracted either in person or by an agent", and stated that "the doctrine of unjust enrichment cannot be used to circumvent this principle merely by substituting one person or debtor for another". I do not find that the third-party beneficiary is liable on the theory of quantum meruit or implied contract, at least in the absence of inability to recover under the underlying contract.

The real thrust of Chrysler's position is that based upon principles of restitution Chrysler is entitled to recover from Airtemp because Airtemp received the services which Chrysler rendered. Chrysler cites *Restatement of Restitution* § 40 which provides:

"A person who has rendered services to another or services which have inured to the benefit of another or who has affixed chattels to the land or chattels of another is entitled to restitution therefor if the services were rendered or the chattels were affixed:

(a) because of the fraud or material misrepresentation of the other, or

\* \* \* \* \* \*

(c) in the mistaken belief, of which the other knew or had reason to know, that the services would inure to the benefit of the one giving them or of a third person, or that the other promised to pay for them."

The pertinent portion of the comment which discusses clause (c) states:

"A landowner who has knowledge that another, in the mistaken belief of ownership, is making improvements upon the land is liable to the other for the value of improvements made after the landowner has had a reasonable opportunity to notify the other of his mistake and fails to do so. The same result follows where a person accepts services from another, having reason to know that the other is under a belief that the recipient or a third person has promised compensation or is otherwise under a duty to pay for them. In both cases the recipient is liable for the reasonable value of the services irrespective of their value to him"

From this comment it is clear that this section was intended to cover the situation where there was a mistaken belief that there had been a binding promise by the recipient of the services *or* that a third person would pay for the services. A binding promise by either the recipient or a third person renders § 40(c) inapplicable. Chrysler's contention ignores the promise of Fedders and its contention rests solely on the absence of a binding promise by Airtemp. Accordingly, § 40(c) is not applicable to the facts of this case.

In order to consider the application of the concept of mistake it is necessary to consider the relationship of the parties to the alleged mistake. Under the Agreement between Chrysler and Fedders, Chrysler was bound to render these services and Chrysler was legally entitled to receive payment for those services from Fedders. The Court has held above that Chrysler was not entitled under the Agreement to be paid by Airtemp for those services. Regardless of Chrysler's belief, the rendering of the services was an obligation of Chrysler under the Agreement. Chrysler gave up nothing which it was not bound to give up by virtue of the Agreement and Airtemp received nothing which it was not entitled to receive by virtue of the Agreement.

▌ The function of restitution is to restore a person to the position he formerly occupied. *Restatement of Restitution* § 1, comment a. It is to require a person who has been unjustly enriched at the expense of another to compensate the other party for the substance of the enrichment. Ibid. "The mere fact that a person benefits another is not itself sufficient to require the other to make restitution". Ibid, comment c. In order to warrant restitution, the retention of the benefit must be unjust. Ibid. The person claiming restitution must have been deprived of something or some right which he was entitled to retain and the person from whom restitution is required must have received something or some benefit to which he was not rightfully entitled. As a third-party beneficiary, Airtemp was entitled under the Agreement to receive the services, and therefore, the mere retention of the services which Chrysler rendered did not, in the absence of inability to recover from Fedders, render Airtemp's retention of the services unjust enrichment.

The policy embodied in *Restatement of Restitution* insofar as it applies to a third-party beneficiary is set forth in § 110 as follows:

"A person who has conferred a benefit upon another as the performance of a contract with a third person is not entitled to restitution from the other merely because of the failure of performance by the third person."

Chrysler relies heavily on *Joan Briton, Inc. v. Streuber,* N.Y.Supr., 36 A.D.2d 464, 321 N.Y.S.2d 195 (1971), aff'd 330 N.Y.S.2d 612, 30 N.Y.2d 551, 281 N.E.2d 555 (1972) in which an interior decorator sued the party who contracted for decorating an apartment and in a separate count sued the occupant of the apartment, in the latter instance basing the cause of action upon a theory of unjust enrichment. Upon the factual statement that the defendant in the unjust enrichment cause of action was not merely the innocent recipient of a gift but was intimately involved in every stage of the arrangements, the Court upheld the unjust enrichment cause of action. The legal reasoning by which the facts were brought within the unjust enrichment theory was not discussed in *Streuber* nor was the pertinent section of the *Restatement of Restitution.* In view of the language of *Restatement of Restitution* § 110 and 5 *Corbin on Contracts* § 1117 I do not accept the holding of *Streuber.* There has been no showing that Fedders has repudiated Chrysler's claim for the services other than to assert an offset relating to representations allegedly made by Chrysler in the inducement of this contract. I conclude that at least in the absence of a showing that Chrysler is unable to recover for these services from Fedders under the Agreement Chrysler is not entitled to pursue this claim against Airtemp based on quantum meruit, implied contract or restitution.

## VII.

The test for determining whether summary judgment should be granted requires that the moving party must establish that all reasonable inferences be drawn favorably to the non-moving party and that there must be no dispute of material fact; moreover, the burden of establishing facts to support the position of the moving party is on that party. *Murphy v. Godwin*, Del. Supr., 304 A.2d 668 (1973); *Coleman v. Garrison*, Del.Supr., 349 A.2d 8 (1975); *Collins v. F. W. Woolworth Co.*, Del.Supr., 295 A.2d 732 (1972); *Ebersole v. Lowengrub*, Del. Supr., 180 A.2d 467 (1962). Applying the above tests, I find that the evidentiary material submitted does not establish that under no set of facts provable under the complaint was a valid contract made directly between Chrysler and Airtemp whereby Airtemp agreed to pay for the services rendered by Chrysler.

With respect to Chrysler's motion for partial summary judgment, I do not find that Chrysler has met the test stated above to warrant granting of that motion.

Airtemp's motion to stay is denied on the grounds set forth in an earlier Letter Opinion.

Airtemp will submit an appropriate order on notice or consent and shall file its answer and affidavit of defense within 20 days after signing of such order.