# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| STRYKER DEMOLITION & ENVIRONMENTAL SERVICES, LLC, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | |
| ARCADIS U.S., INC. and ANSELL HEALTHCARE PRODUCTS, LLC, | ) ) ) | C.A. No. N20C-03-166 MMJ [CCLD] |
| Defendants. | ) ) | |

Submitted: September 15, 2020
Decided: November 10, 2020

On Defendant Ansell Healthcare Products, LLC's Motion to Dismiss Count III of
Plaintiff's Second Amended Complaint
**GRANTED**

## OPINION

Sally J. Daugherty, Esq. (Argued), Cohen, Seglias, Pallas, Greenhall & Furman, P.C., Wilmington, Delaware, *Attorney for Plaintiff Stryker Demolition & Environmental Services, LLC.*

Sherilyn Pastor, Esq. (Argued), Joseph Vila, Esq., McCarter & English, LLP, Newark, New Jersey, Kate Roggio Buck, Esq., McCarter & English, LLP, Wilmington, Delaware, *Attorneys for Defendant Ansell Healthcare Products, LLC.*

**JOHNSTON, J.**

## FACTUAL AND PROCEDURAL CONTEXT

### *Parties*

This is a dispute between a subcontractor, general contractor, and property owner concerning demolition of a facility in Louisiana. Plaintiff Stryker Demolition & Environmental Services, LLC ("Stryker") is a Delaware limited liability company with its principal place of business in Pennsylvania.[1] Defendant Arcadis U.S., Inc. ("Arcadis") is a Delaware corporation with its principal place of business in Colorado.[2] Defendant Ansell Healthcare Products, LLC ("Ansell") is a Delaware limited liability company with its principal place of business in New Jersey.[3]

### *Stryker and Arcadis Enter into a Services Contract*

In December 2018, Ansell hired Arcadis to act as its general contractor on a construction project known as Former Ansell Facility.[4] The facility is located at 6901 Westport Avenue, Shreveport, Louisiana (the "Property Site").[5]

In its role as general contractor, Arcadis entered into a services contract with

---

[1] Second Amended Complaint ¶ 1.
[2] *Id.* at ¶ 2.
[3] *Id.* at ¶ 3.
[4] *Id.* at ¶ 9.
[5] *Id.* at ¶ 5.

Stryker on December 11, 2018 (the "Contract").[6] Under the terms of the Contract, Stryker was to provide demolition and removal services, including demolishing the roof of the existing building and disposing of the roofing material.[7] Stryker was to be paid for its work by Arcadis.[8] Any changes to Stryker's work plans were to be approved by both Arcadis and Ansell.[9] Ansell was not a party to the Contract.[10]

### *Louisiana Litigation*

After beginning work, Stryker discovered that the roof consisted of two separate roofing systems on top of each other and included a layer of heavily saturated fiberglass insulation.[11] The unforeseen makeup of the roof increased the cost of demolition and disposal substantially from the cost estimate included in Stryker's project bid.[12] In May 2019, upon receipt of the first invoice for disposal of the roofing materials, Stryker contacted Arcadis' project manager and requested a change order to compensate Stryker for the extra costs.[13] Both Arcadis and Ansell rejected the change order.[14] Stryker continued performing and incurred

---

[6] *Id.* at ¶ 51.
[7] *Id.* at ¶¶ 51, 53.
[8] *Id.* at Exhibit C, Schedule A § 3.1.
[9] *Id.* at § 6.
[10] *Id.* at Ex. C.
[11] *Id.* at ¶¶ 35.
[12] *Id.* at ¶ 59.
[13] *Id.* at ¶ 61.
[14] *Id.* at ¶¶ 62, 65, 67, 74.

additional unexpected and unforeseen costs with respect to different aspects of the demolition and removal work.[15]

Upon completion, Stryker sought full reimbursement of its costs from Arcadis. On October 10, 2019, Stryker filed a Statement of Claim and Privilege against the Property Site.[16] After Stryker and Arcadis were unable to reach an agreement about what amounts were due, the two parties entered into mediation.[17] This attempt at mediation was unsuccessful. On March 11, 2020, Arcadis filed a lawsuit in Louisiana, asserting breach of contract claims against Stryker.[18] Arcadis argued that Stryker breached the Contract by failing to timely perform and by filing the Statement of Claim and Privilege.[19] The case was removed to the United States District Court for the Western District of Louisiana, Shreveport Division at Stryker's request.[20] Subsequently, Stryker filed a motion to dismiss for lack of subject matter jurisdiction and failure to state a claim.[21] That motion is currently pending.[22]

---

[15] *Id.* at ¶ 79.
[16] Arcadis U.S. Inc.'s Opening Brief in Support of its Motion to Dismiss or Stay at 4.
[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] *Id.* at 5.
[21] *Id.*
[22] *Id.*

*Delaware Litigation*

On March 17, 2020, Stryker filed a Complaint in this Court. The Complaint asserted claims against Arcadis for breach of contract and violation of the Louisiana Prompt Pay Statute.[23] The Complaint additionally asserted a claim against Ansell for unjust enrichment in Count III.[24] On April 30, 2020, Stryker filed its First Amended Complaint which added claims against Arcadis for fraud and negligent misrepresentation and a claim against Ansell for breach of contract.[25] On May 26, 2020, Stryker filed its Second Amended Complaint which eliminates the claims against Arcadis for negligent misrepresentation and against Ansell for breach of contract.[26] On July 1, 2020, Ansell filed a Motion to Dismiss Stryker's claim of unjust enrichment. The parties briefed the issue and the Court heard oral argument on September 15, 2020.[27]

## STANDARD OF REVIEW

*Failure to State a Claim Upon Which Relief Can be Granted*

In a Rule 12(b)(6) Motion to Dismiss, the Court must determine whether the

---

[23] Complaint ¶¶ 65-84.

[24] *Id.* at ¶¶ 85-94.

[25] First Amended Complaint ¶¶ 103-166, 135-153.

[26] *See* Second Amended Complaint.

[27] On June 8, 2020, Arcadis filed a Motion to Dismiss or Stay all claims which it is a defendant to so that the case in Louisiana may be litigated first. That motion is pending but does not have an effect on Ansell's Motion to Dismiss.

5

claimant "may recover under any reasonably conceivable set of circumstances susceptible of proof."[28] The Court must accept as true all well-pleaded allegations.[29] Every reasonable factual inference will be drawn in the non-moving party's favor.[30] If the claimant may recover under that standard of review, the Court must deny the Motion to Dismiss.[31]

## ANALYSIS

### *Defendant Ansell's Contentions*

Ansell moves to dismiss Count III of Stryker's Second Amended Complaint. Ansell contends that Stryker's unjust enrichment claim fails because Stryker has other remedies at law available. The services provided by Stryker, and the payment for such services, are governed by the express contract between Stryker and Arcadis. The Contract controls the rights and remedies available to Stryker. As such, Ansell maintains that any claims by Stryker involving payment for services must be litigated by Stryker and Arcadis.

### *Plaintiff Stryker's Contentions*

Stryker argues in response that Ansell may properly be sued for unjust enrichment because Ansell retained the authority to approve or deny change order

---

[28] *Spence v. Funk*, 396 A.2d 967, 968 (Del. 1978).
[29] *Id.*
[30] *Wilmington Sav. Fund. Soc'v, F.S.B. v. Anderson*, 2009 WL 597268, at *2 (Del. Super.) (citing *Doe v. Cahill*, 884 A.2d 451, 458 (Del. 2005)).
[31] *Spence*, 396 A.2d at 968.

6

requests under the Contract and ultimately received the benefits of Stryker's services. Stryker further contends that as a matter of policy, it would be inequitable to allow the mere existence of the Contract to bar Stryker from seeking relief from Ansell.

### *Unjust Enrichment*

Unjust enrichment is "the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience."[32] To succeed in a claim for unjust enrichment, the plaintiff must show that there is: "(1) an enrichment; (2) an impoverishment; (3) a relation between the enrichment and impoverishment; (4) the absence of justification; and (5) the absence of a remedy provided by law."[33] Before analyzing the merits of an unjust enrichment claim, the Court first must determine whether there is an applicable contract.[34] Where a plaintiff's actions are governed by contract, the plaintiff cannot attempt to circumvent that contract by bringing an unjust enrichment claim against a third-party.[35]

---

[32] *Fleer Corp. v. Topps Chewing Gum, Inc.*, 539 A.2d 1060, 1062 (Del. 1988).

[33] *Nemec v. Shrader, et al.*, 991 A.2d 1120, 1130 (Del. 2010).

[34] *Vichi v. Koninklijke Philips Electronic N.V.*, 62 A.3d 26, 58 (Del. Ch. 2012) ("[I]n evaluating a party's claim for an equitable remedy based on unjust enrichment, courts inquire at the threshold as to whether a contract already governs the parties' relationship.").

[35] *Metcap Secs. LLC v. Pearl Senior Care, Inc.*, 2007 WL 1498989, at *6 (Del. Ch.).

The parties primarily rely on two cases: *MetCap Securities v. Pearl Senior Care, Inc.*[36] and *Chrysler Corporation v. Airtemp Corporation.*[37] In *MetCap*, the Court of Chancery addressed whether an unjust enrichment claim could be brought against one party for services rendered at the behest of another party.[38] MetCap Securities, an investment banking advisory firm, entered into an agreement with North American Senior Care, Inc. ("NASC"), a potential acquirer, to provide advising services related to an acquisition.[39] The agreement, solely between MetCap and NASC, set forth the services MetCap would provide and stated that NASC would pay MetCap an "investment advisory fee" plus expenses upon closing.[40] NASC's obligations connected to the acquisition later were transferred to the defendants.[41] The final merger agreement, which absolved NASC of its obligations, contained a clause that stated: "No broker, finder, financial advisor, investment banker, or other Person is entitled to any brokerage, finder's, financial advisor's or other similar fee or commission in connection with the Merger base upon arrangements made by or on behalf of Parent or Merger Sub."[42] Thus, the

---

[36] *Id.*
[37] 426 A.2d 845, 847 (Del. Super. 1980).
[38] *Metcap Secs.*, 2007 WL 1498989.
[39] *Id.* at *1.
[40] *Id.*
[41] *Id.* at *2.
[42] *Id.* at *2, 3.

8

defendants had not assumed NASC's obligation to pay MetCap the agreed upon investment advisory fee.[43]

Without knowledge of this clause, MetCap continued to provide advising services after the merger agreement was signed and NASC was no longer involved in the acquisition.[44] MetCap brought an unjust enrichment claim against the defendants to receive the entirety of its fee, arguing that the defendants had unjustly benefitted from MetCap's services.[45] The Court of Chancery separated the claim into two parts based on services provided by MetCap before the merger agreement was signed and services provided after.[46] The Court of Chancery reasoned that "[i]t is not enough that the defendant received a benefit from the activities of the plaintiff; if the services were performed at the behest of someone other than the defendants, the plaintiff must look to that person for recovery."[47]

Although the defendants arguably benefitted from the entirety of MetCap's work, the services rendered prior to the merger agreement being signed were done at the behest of NASC, not the defendants.[48] The Court of Chancery dismissed the first part of the unjust enrichment claim, finding that MetCap needed to seek

---

[43] *Id.* at *3.
[44] *Id.* at *4.
[45] *Id.* at *5, 6.
[46] *Id.*
[47] *Id.* at *6 (quoting *Michele Pommier Models, Inc. v. Men Women N.Y. Model Mgmt., Inc.*, 14 F.Supp.2d 331, 338 (S.D.N.Y. 1998), *aff'd*, 173 F.3d 845 (2nd Cir. 1999)).
[48] *Id.*

payment from NASC in accordance with their express contract.[49] However, after the merger agreement was signed, NASC was no longer part of the acquisition.[50] Because MetCap potentially could show that the defendants were aware of and benefitted from the services provided after the merger agreement was signed, and understood that NASC would not pay for those services, the Court of Chancery declined to dismiss the second part of the unjust enrichment claim.[51]

In the instant case, only the first part of the Court of Chancery's analysis is applicable. It is undisputed that there is a relevant agreement in this case and that the subject matter of the Contract covers the same services that give rise to Stryker's unjust enrichment claim. The Contract is the sole agreement that determined: (1) the scope of the services to be rendered by Stryker; (2) to whom the services were to be provided; (3) the payment that Stryker would receive for its services; and (4) who was responsible for paying Stryker. Additionally, unlike in *MetCap*, there was no change in parties at any point. Stryker entered into the Contract with Arcadis and all of the services provided by Stryker were furnished at the behest of Arcadis. Therefore, under the *MetCap* analysis, Stryker must seek to recover from Arcadis, not Ansell.

---

[49] *Id.*
[50] *Id.*
[51] *Id.*

10

In *Chrysler Corporation v. Airtemp Corporation*, Chrysler Corporation ("Chrysler") entered into an agreement with Fedders Corporation ("Fedders").[52] Fedders agreed to purchase assets from Chrysler's Airtemp Division.[53] The assets purchased by Fedders were transferred to Airtemp, a wholly-owned subsidiary of Fedders.[54] Pursuant to the contract, Chrysler provided services to Airtemp which Fedders agreed to pay for.[55] After Fedders failed to compensate Chrysler, Chrysler brought a suit against Airtemp.[56] Chrysler attempted to recover based on account annexed, account stated, book account, and quantum meruit.[57] Chrysler did not deny that the services provided to Airtemp were governed by its contract with Fedders.[58] Instead, Chrysler argued that the quantum meruit claim was an "alternative claim" that was permissible because Airtemp was a third-party beneficiary of the contract.[59] The Superior Court rejected this argument and found that Airtemp, as a third-party beneficiary, was not liable under quantum meruit "at least in the absence of inability to recover under the underlying contract."[60]

---

[52] *Chrysler*, 426 A.2d at 847.
[53] *Id.*
[54] *Id.*
[55] *Id.*
[56] *Id.*
[57] *Id.* at 848.
[58] *Id.* at 853-54.
[59] *Id.*
[60] *Id.* at 854.

11

It cannot be denied that Ansell benefited from the services provided by Stryker. This benefit alone, however, cannot support Stryker's unjust enrichment claim.[61] In accordance with *Chrysler*, the Court finds that third-party beneficiary status alone is an insufficient basis for pursuing relief from anyone other than Stryker.

The Court finds that the express contract between Stryker and Arcadis governs this dispute. Because Stryker's potential recovery is governed by the Contract, the unjust enrichment claim against Ansell must be dismissed.

### *Mechanics' Lien*

In Delaware, the ordinary remedy for a plaintiff in Stryker's position would be a mechanics' lien. When a contractor cannot or will not pay a subcontractor, and the property owner has benefitted from the subcontractor's services, the subcontractor may impose a lien against the property to secure payment.[62] A party seeking a mechanics' lien must file a statement of claim in accordance with the statutory requirements.[63] A writ of *scire facias* will determine the ultimate amount

---

[61] Stryker contends that "Ansell is precisely the type of third party for which a cause of action for unjust enrichment is intended." To support this assertion, Stryker quotes *Chrysler* as saying that "where the defendant 'was not merely an innocent recipient of a gift but was intimately involved at every stage of the arrangements,' a claim for unjust enrichment will stand." It should be noted that this language actually came from a New York case which was expressly rejected by this Court in *Chrysler*. However, even if this language were applicable, it would not change the outcome here.

[62] 25 *Del. C.* § 2702.

[63] *Id.* at § 2712.

that the party can recover through the lien.[64] Payment may then be recovered through a lien foreclosure sale.[65]

This issue was neither raised nor briefed by the parties. The Court need not determine the applicability of any possible future lien at this time. However, the Court notes that Stryker has contractually waived its right to place a mechanics' lien on the Property Site.[66] Such a waiver may be deemed void as against public policy and unenforceable under Delaware law.[67] The parties stated during oral argument they believe the waiver is valid under Louisiana law. Nevertheless, it is a question for another day whether Stryker retains any ability to attach an enforceable lien.[68]

### Stryker's Ability to Recover from the Defendants

During oral argument before the Court, Ansell acknowledged that there are reasons why it may be beneficial to remain a party to this case. Nevertheless, Ansell still requests dismissal. In doing so, Ansell assumes the risk that judgment may be entered against Arcadis without Ansell participating in discovery or motion

---

[64] *Id.* at § 2714.
[65] *Id.* at § 2719.
[66] Second Amended Complaint, Exhibit C, Schedule F § SP-F3.
[67] 25 *Del. C.* § 2706.
[68] *See Shaw Constructors, Inc. v. ICF Kaiser Engineers, Inc.*, 395 F.3d 533, 549 (5th Cir. 2004) (discussing Louisiana cases which define "waiver" as the voluntary relinquishment of a "known existing legal right").

13

practice. Ansell further assumes the risk that it may be held responsible for any amount of Arcadis' liability and be bound by any legal determinations.

There is no suggestion at this time that Arcadis lacks the resources to pay any judgement that may be obtained in favor of Stryker in this action. However, if Arcadis is found liable and is unable to make Stryker whole, Stryker may potentially: (1) seek relief under bankruptcy law; (2) question the validity of the waiver of the mechanics' lien; or (3) raise an unjust enrichment claim at that time.

## CONCLUSION

The Court finds that the operative agreement governing this dispute is the express Contract formed between Stryker and Arcadis on December 11, 2018. Stryker has the ability to seek compensation from Arcadis and is currently doing so. Ansell's authority under the Contract to approve or deny change orders does not create a separate relationship between Stryker and Ansell sufficient to permit Stryker to assert a claim against Ansell for unjust enrichment. This is particularly appropriate under the circumstances where there is no suggestion that Arcadis is judgment proof. Should that change, Stryker may seek in the future to obtain relief from Ansell on the basis of any liability Arcadis fails to satisfy.

14

THEREFORE, Ansell's Motion to Dismiss Count III of Stryker's Second Amended Complaint is hereby **GRANTED WITHOUT PREJUDICE.**

**IT IS SO ORDERED.**

The Honorable Mary M. Johnston