**GILBANE BUILDING COMPANY, Plaintiff,**

v.

**The NEMOURS FOUNDATION, et al., Defendants.**

**Civ. A. No. 83–58–WKS.**

United States District Court, D. Delaware.

March 25, 1985.

Victor F. Battaglia, Robert K. Beste, Jr., Biggs & Battaglia, Wilmington, Del., Jack Rephan, Paula J. Glaser, Braude, Margulies, Sacks & Rephan, Washington, D.C., for Pierce.

Roderick R. McKelvie, Ashby, McKelvie & Geddes, Wilmington, Del., Jeffrey G. Weil, Mark Klugheit, Dechert, Price & Rhoads, Philadelphia, Pa., for Frazer.

James S. Green, Connolly, Bove, Lodge & Hutz, Wilmington, Del., Howard D. Venzie, Jr., Kevin G. Amadio, Venzie, Phillips & Warshawer, Philadelphia, Pa., for Honeywell.

Stuart B. Young, Josy B. Ingersoll, Young, Conaway, Stargatt & Taylor, Wilmington, Del., George Anthony Smith, Randall F. Hafer, David A. Dial, Smith, Currie & Hancock, Atlanta, Ga., for Nemours.

Howard M. Berg, Paul R. Bradley, Howard M. Berg & Associates, Wilmington, Del., for Furlow Associates.

William Prickett, Richard R. Wier, Jr., Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Del., John A. Wolf, M. Hamilton Whitman, Ober, Kaler, Grimes & Shriver, Baltimore, Md., for Gilbane.

Frank O'Donnell, O'Donnell & Hughes, Wilmington, Del., Edward C. German, Peter E. Kane, German, Gallagher & Murtagh, Philadelphia, Pa., for Saxelbye.

William H. Sudell, Jr., Denison Hatch, Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for DiSabatino.

Rodman Ward, Jr., Steven J. Rothschild, Edward P. Welch, Skadden Arps, Slate, Meagher & Flom, Wilmington, Del., David G. Lane, William D. Blakely, Lewis, Mitchell & Moore, Vienna, Va., for Dynalectric.

## OPINION

STAPLETON, Chief Judge:

Before me is one portion of a consolidated action arising out of the construction of an 830,000 square foot addition to the Alfred I. duPont Institute Children's Hospital in Wilmington, Delaware (the "Project"). Contractual disputes and delays in completing the Project have spawned a complex and entangled thicket of litigation involving numerous parties and millions of dollars in claims. Since the factual background of the case has been set forth in some detail in prior opinions, *see, e.g., Gilbane Building Co. v. Nemours Foundation*, 568 F.Supp. 1085 (D.Del. 1983), repetition here is unnecessary. However, certain portions of this background must be highlighted in order to provide a factual backdrop for the discussion contained herein.

## BACKGROUND

On April 5, 1983, Pierce Associates, Inc. ("Pierce") and Dynalectric Company ("Dynalectric") filed "sister" breach of contract actions against Gilbane Building Company ("Gilbane"). Gilbane had been retained by the Nemours Foundation ("Nemours"), the owner of the Project, to serve as the prime contractor during Phase 5B of the Project. Pierce and Dynalectric had both entered into subcontracts with Gilbane to perform portions of the work scheduled for completion during Phase 5B. It was the alleged breach of these contracts by Gilbane which provided the genesis for the suits by Pierce and Dynalectric.

In response to the initiation of these breach of contract actions, Gilbane filed counterclaims against Pierce and Dynalectric and third-party complaints against Nemours, Saxelbye, Powell, Roberts & Ponder, Inc. ("Saxelbye"), the architect for the Project, and Furlow Associates, Inc. ("Furlow"), the mechanical and building management systems engineer for the Project. Nemours then filed an answer and counterclaim against Gilbane in each of the cases and claims pursuant to Rule 14 of the Federal Rules of Civil Procedure against Pierce and Dynalectric. Subsequently, Nemours twice amended these claims against Pierce and Dynalectric.

In April, 1984, both Pierce and Dynalectric answered Nemours' claims and asserted virtually identical counterclaims against Nemours. Nemours moved to dismiss on the basis that neither Pierce nor Dynalectric had stated claims upon which relief could be granted and that Dynalectric had not stated a claim properly within the subject matter jurisdiction of the Court. On October 31, 1984, following the briefing of these motions, both Pierce and Dynalectric amended their counterclaims against Nemours, and on November 7, 1984, the Court heard oral argument, at which time, Nemours represented that its motions to dismiss applied to both the original counterclaims as well as the amended counterclaims.[1] Thereafter, the two cases were consolidated with three other actions similarly arising out of disputes concerning the Project.

## DISCUSSION

### A. Dynalectric's Counterclaim Against Nemours—Subject Matter Jurisdiction

Nemours contends that Dynalectric's counterclaim is not properly within the subject matter jurisdiction of the Court since Nemours and Dynalectric are both citizens of Florida and no federal question is presented by the counterclaim.[2] In short, Nemours argues that in order for a plaintiff to assert a claim against a third-party defendant, there must be an independent jurisdictional basis for such a claim, notwithstanding that such a claim may be in the nature of a counterclaim asserted in response to a claim made by the third-party defendant against the original plaintiff. In support of its position, Nemours relies principally on *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978).

In response, Dynalectric contends that where a third-party defendant has asserted a claim against the original plaintiff pursuant to Fed.R.Civ.P. 14, and, as a result, the original plaintiff has asserted what is essentially a compulsory counterclaim against the third-party defendant, *Owen Equipment & Erection Co. v. Kroger*, does not require an independent basis for jurisdiction since such a claim is properly within the ancillary jurisdiction of the Court.

While both parties have vigorously contested this issue, the Third Circuit Court of Appeals has recently held that "if … a third-party defendant asserts claims under Rule 14(a) against [a] plaintiff, ancillary jurisdiction extends to support plaintiff's 'compulsory counterclaim' under Fed.R. Civ.P. 13(a)." *Finkle v. Gulf & Western Manufacturing Co.*, 744 F.2d 1015, 1018 (3d Cir.1984).[3] Since this decision is bind-

---

**1.** On November 20, 1984, Nemours renewed its motions to dismiss, expressly indicating that the motions were to apply with respect to the amended counterclaims filed by Pierce and Dynalectric and that it would rely on the briefing previously submitted.

**2.** Dynalectric concedes that its counterclaim is not based on a federal question and that there is no diversity of citizenship between the two parties.

**3.** *Finkle v. Gulf & Western Manufacturing Co.* involved a factual background remarkably similar to the case at bar. Plaintiff, as lessor, brought suit against, *inter alia*, Gulf & Western Manufacturing Company ("G & WM"), the lessee, to recover an amount allegedly owed for failure to renew the lease in a timely manner. Jurisdiction was based on diversity of citizenship. G & WM then impleaded Philmont Steel Products, Inc. ("Philmont"), the party to which G & WM had assigned its rights under the lease,

on the basis of an alleged indemnification agreement. Philmont, in turn, filed a claim against the plaintiff to recover damages allegedly sustained by plaintiff's refusal to allow Philmont to renew the lease after the renewal deadline had passed. In response, plaintiff filed a counterclaim against Philmont for the sum owed for failure to timely renew the lease. However, as between plaintiff and Philmont, no diversity of citizenship existed.

The Third Circuit began its analysis of the jurisdictional issue presented by the case by noting that both G & WM's claims against Philmont and Philmont's claims against the plaintiff could be maintained absent an independent jurisdictional basis since they fell within the ancillary jurisdiction of the court. The court then extended the ambit of ancillary jurisdiction to cover plaintiff's claims against Philmont as well, commenting that "[s]uch claims are induced by the third-party's choice to assert its claims against plaintiff." 744 F.2d at 1018. Moreover,

ing precedent, the controlling issue therefore is whether Dynalectric's claim against Nemours constitutes a "compulsory counterclaim".[4]

Rule 13(a) of the Federal Rules of Civil Procedure governs the assertion of compulsory counterclaims as follows:

> A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it *arises out of the transaction or occurrence* that is the subject matter of the opposing party's ·claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. . . .

Fed.R.Civ.P. 13(a) (emphasis added).

Nemours does not contend that Dynalectric's counterclaim requires the presence of third parties over whom this Court cannot acquire jurisdiction. Hence, the· key question is whether Dynalectric's counterclaim arises out of the same transaction or occurrence that formed the basis for Nemours' claims against Dynalectric.

In *Xerox Corp. v. SCM Corp.*, 576 F.2d 1057 (3d Cir.1978), the Third Circuit indicated that "the operative question in determining if a claim is a compulsory counterclaim is whether it bears a logical relationship to an opposing party's claim." *Id.* at 1059.

> [A] counterclaim is logically related to the opposing party's claim where separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts. Where multiple claims involve many of the same factual issues, or the same factual and legal issues, or where they are offshoots of the same

---

the court distinguished *Owen Equipment & Erection Co. v. Kroger, supra,* on the basis that *Owen* had simply prohibited the voluntary assertion by a plaintiff of an independent claim against a third-party defendant absent an independent jurisdictional basis. By contrast, the court found that the plaintiff in *Finkle,* as here, had chosen not to independently assert claims against the third-party defendant. Rather, it was only in response to the third-party defendant's assertion of claims against the plaintiff ·that the plaintiff had filed compulsory counterclaims.

**4.** As the Supreme Court noted in *Owen Equipment & Erection Co. v. Kroger, supra,* a determination as to whether a nonfederal claim between parties of the same state is properly within the scope of the subject matter jurisdiction of the federal courts involves a two-step analysis. First, the nonfederal claim must fall within the ambit of the federal judicial power created and limited by Article III of the Constitution.

> Pendent jurisdiction, in the sense of judicial *power,* exists whenever there is a claim 'arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority . . .,' U.S. Const., Art. III, ·§ 2, and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case'. . . . The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's ·claims are such that he would ordinarily be

expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole.

437 U.S. at 371, 98 S.Ct. at 2401 (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966) (emphasis in original). While *United Mine Workers v. Gibbs* involved pendent jurisdiction and *Owen Equipment & Erection Co. v. Kroger* ·involved ancillary jurisdiction, the Court pointed out that it was unnecessary to decide whether there were any "principled" differences between ancillary and pendent jurisdiction, 437 U.S. at 370, n. 8, 98 S.Ct. at 2400, n. 8, since the cases involved two species of the same generic problem. *Id.* at 370, 98 S.Ct. at 2400.

Second, assuming that the Constitution confers the power on the federal courts to hear the nonfederal claims, such claims must be within the courts' jurisdiction as limited by Congress. *Id.* at 372–73, 98 S.Ct. at 2401–2. That is, even though nonfederal and federal claims may derive from "a common nucleus of operative fact", Congress may have precluded the federal courts from entertaining the nonfederal claims.

With this in mind, *Finkle v. Gulf & Western Manufacturing Co., supra,* can be seen as an implicit determination by the Third Circuit that when a claim by a plaintiff against a third-party defendant is a "compulsory counterclaim" as that term is used in Fed.R.Civ.P. 13(a), such a claim and the "federal" claims contained in the case necessarily derive from a common nucleus of operative fact and the claim is within the ambit of the subject matter jurisdiction conferred upon the federal courts by Congress.

basic controversy between the parties, fairness and considerations of convenience and of economy require that the counterclaimant be permitted to maintain his cause of action.

*Id.* (quoting *Great Lakes Rubber Corp. v. Herbert Cooper Co.,* 286 F.2d 631, 634 (3d Cir.1961). *See also Paine, Webber, Jackson & Curtis, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 587 F.Supp. 1112, 1113–14 (D.Del.1984); *Wheaton Glass Co. v. Pharmex, Inc.,* 548 F.Supp. 1242, 1246 (D.N.J.1982); 3 J. Moore, *Moore's Federal Practice* ¶ 13.13 (2nd Ed. 1984).

A review of Nemours' claims against Dynalectric indicates that Dynalectric's counterclaim does in fact arise out of the same transaction or occurrence upon which Nemours' claims are based. Both sets of claims relate to delays and disputes occurring during Phase 5B of the Project. More specifically, Nemours, as a third-party beneficiary of Dynalectric's subcontract with Gilbane, has charged Dynalectric with breaching its subcontractual obligations. Nemours has also demanded judgment against Dynalectric for damages allegedly resulting from Dynalectric's intentional and/or negligent failure to perform duties owed to Nemours in a timely and reasonably careful manner. Dynalectric, as will be discussed more fully hereinafter, has charged Nemours with failure to supply Dynalectric with accurate information, plans, and specifications upon which Dynalectric grounded its decision to enter into the subcontract with Gilbane, negligently and tortiously interfering with Dynalectric's contractual relationship with Gilbane, and retaining the benefit of Dynalectric's labor and materials without paying full compensation thereof.

Since Dynalectric's claims are clearly "compulsory counterclaims", I find that they properly fall within the ancillary jurisdiction of this Court. Therefore, Nemours' motion to dismiss Dynalectric's counterclaim for lack of subject matter jurisdiction must be denied.[5]

**B.** *Pierce's And Dynalectric's Counterclaims Against Nemours—Substantive Challenges*

As previously noted, the counterclaims filed by Pierce and Dynalectric against Nemours are virtually identical. Therefore, the following discussion is applicable to both counterclaims. In addition, the amendments which Pierce and Dynalectric made to their counterclaims following the completed briefing on Nemours' motions to dismiss have rendered some of Nemours' contentions moot. Indeed, at oral argument, Nemours withdrew its challenge to Count II of the amended counterclaims on the basis that the amended counterclaims concededly set forth a claim for fraudulent misrepresentation. Consequently, I need only focus on the assertions by Nemours which have not been cured by the amendments to the counterclaims.

The standard which governs motions to dismiss for failure to state a claim upon which relief can be granted is well known. As the Third Circuit Court of Appeals recently stated:

> The relevant legal precept is a familiar one; in deciding a Rule 12(b)(6) motion, factual allegations of the complaint are to be accepted as true and the complaint should be dismissed only if it appears to a certainty that no relief could be granted under any set of facts which could be proved. Reasonable factual inferences will be drawn to aid the pleader.

---

**5.** I note in passing that the Third Circuit has recently established a three-tiered analysis to determine whether ancillary or pendent jurisdiction should be exercised in a particular case. *Abromovage v. United Mine Workers,* 726 F.2d 972, 989–991 (3d Cir.1984). First, there must be judicial power under the Constitution to entertain the nonfederal claims. Second, the exercise of ancillary or pendent jurisdiction must not violate federal policy decisions as generally embodied in the relevant federal rules and statutes. Finally, the exercise of jurisdiction over the ancillary or pendent claims must not offend prudential considerations of convenience, judicial economy, and fairness to the litigants. I find that my decision to invoke ancillary jurisdiction over Dynalectric's counterclaim against Nemours is consistent with this three-tiered analysis.

*D.P. Enterprises, Inc. v. Bucks County Community College,* 725 F.2d 943, 944 (3d Cir.1984).

Count I of the amended counterclaims of Pierce and Dynalectric advances a claim based on negligent misrepresentation. Pierce and Dynalectric allege that Nemours carelessly and negligently furnished them with both incomplete, inaccurate, and insufficient plans and specifications relating to the Project and incorrect information concerning the completion date of the prior phase (Phase 5EXT) of construction work on the Project. Pierce and Dynalectric further claim that they submitted their subcontract bids to Gilbane on the basis of these false representations, and as a result, suffered increased costs and expenses in attempting to perform as required under the subcontracts with Gilbane. In short, Pierce and Dynalectric assert that the cost of and time required for the performance of their work under the subcontracts with Gilbane were substantially increased beyond what they had anticipated in preparing and submitting their subcontract bids since those bids were based on false information negligently supplied by Nemours.

As the primary basis for its challenge to Count I of the counterclaims, Nemours contends that Delaware law [6] does not recognize a cause of action for negligent misrepresentation.[7] At a minimum, Nemours argues, a misrepresentation must be made recklessly in order to be actionable. Mere negligence in propounding a misrepresentation is insufficient.

In response, neither Pierce nor Dynalectric have offered any Delaware cases which expressly recognize a cause of action for negligent misrepresentation. Rather, they argue that even if such a cause of action is without precedent in Delaware, this Court should hear their claims since their interests are entitled to legal protection.

Section 552 of the Restatement (Second) of Torts sets forth the contours of the cause of action for negligent misrepresentation, as follows:

Information Negligently Supplied for the Guidance of Others

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

Restatement (Second) of Torts § 552 (1977).

■ While research has not disclosed any cases in which the Delaware courts have expressly embraced Section 552 of the Restatement (Second) of Torts as a correct statement of Delaware law,[8] I am convinced that the Delaware Supreme Court, if

---

**6.** All the parties agree that Delaware law is controlling with respect to the substantive aspects of the counterclaims.

**7.** Nemours also contends that Count I must be dismissed since Pierce and Dynalectric have failed to allege that they were ignorant of the falsity of this information. This contention is without merit. The amended counterclaims

clearly allege that Pierce and Dynalectric were unaware that the representations upon which they were relying were false.

**8.** In *Employers Liability Assurance Corp. v. Madric,* 4 Storey 146, 54 Del. 146, 174 A.2d 809 (Del.Super.Ct.1961), *rev'd,* 4 Storey 593, 54 Del. 593, 183 A.2d 182 (Del.1962), the court ruled that where an insurance agent had negligently

confronted with this issue, would so hold. Moreover, I find that Count I of the counterclaims of Pierce and Dynalectric allege facts which, if proven, would satisfy the elements of the cause of action for negligent misrepresentation as described by this section of the Restatement (Second) of Torts. First, it is at least inferrable from the counterclaims that Nemours had a "pecuniary interest" in the transactions between Gilbane and Dynalectric and Pierce.[9] Second, Pierce and Dynalectric specifically allege that Nemours knew or should have known that they would rely on the inaccurate plans, specifications, and information concerning the completion of the preceding phase of the construction work provided to them by Nemours in preparing and submitting their subcontract bids to Gilbane. Third, Pierce and Dynalectric allege that Nemours did not exercise reasonable care in providing them with the inaccurate plans, specifications, and other information. Fourth, Pierce and Dynalectric sufficiently allege that they were part of the limited group of entities for whose benefit and guidance Nemours supplied the false information. Finally, Pierce and Dynalectric sufficiently allege that they suffered losses because of their reliance on this false information in performing the transactions that Nemours intended to influence through the dissemination of such information. Consequently, I must deny Nemours' motion to dismiss with respect to Count I of the counterclaims.[10]

provided the insured with incorrect information concerning the scope of his automobile insurance coverage, the insurer was estopped by its agent's misrepresentations from using a restrictive clause in the policy as a means to avoid coverage. The court rejected the insurer's contention that carelessly providing misinformation was not actionable, 174 A.2d at 813–14, relying in part on Restatement of Torts § 552, which parallels section 552 of the Restatement (Second) of Torts. However, the court used this part of its decision simply as a predicate for finding an estoppel against the insurer. On appeal, the Delaware Supreme Court reversed on grounds that the evidence failed to establish that the insurer's agent had misled the insured regarding the scope of his coverage so as to constitute an estoppel without addressing the lower court's discussion regarding § 552 of the Restatement of Torts.

More recently, in *Insurance Company of North America v. Waterhouse*, 424 A.2d 675 (Del.Super.Ct.1980), the court dismissed a fourth party complaint by an insurance company against an independent insurance agency alleging, *inter alia*, that the insurance agency had *negligently disseminated information to the* insured which injured the insurance company. The court found that section 552 of the Restatement (Second) of Torts was inapplicable since the complainant insurance company was not within the limited group of persons for whose benefit and guidance the insurance agency had supplied the information. *Id.* at 677–78.

9. The comments following section 552 indicate that a "defendant's pecuniary interest in supplying the information will normally lie in a consideration paid to him for it or paid in a transaction in the course of and as a part of which it is supplied. *It may, however, be of a more*

*indirect character.*" Restatement (Second) of Torts § 552, comment d (1977).

10. Delaware law has long recognized a distinction between actions at common law for fraud or deceit and actions in equity for relief from fraud. With respect to the former, a necessary element of a common law fraud claim is a showing that the defendant made a false representation with the knowledge or belief that the representation was false, or at least with reckless indifference to the truth of the representation. *Stephenson v. Capano Development, Inc.*, 462 A.2d 1069, 1074 (Del.1983); *Nye Odorless Incinerator Corp. v. Felton*, 35 Del. 236, 162 A. 504, 510–11 (Del.Super.Ct.1931). By contrast, in an action at equity for relief from fraud, there is no requirement that the defendant have known or believed his or her statement to be false or to have made the statement in reckless disregard of the truth. Rather, equity provides a remedy for negligent and/or innocent misrepresentations. *Stephenson v. Capano Development, Inc., supra*, 462 A.2d at 1074; *Eastern States Petroleum Co. v. Universal Oil Products Co.*, 24 Del.Ch. 11, 3 A.2d 768, 775 (1939). Judge Taylor summarized the law in this area as follows:

Although intent to defraud or deceive is an essential element to relief at law, it is not essential to equitable relief if a false statement has been made.... In equity, misrepresentation may be founded merely upon a false statement even though its falseness is not known to the maker of the statement.... Misrepresentation does not require legal fraud.... In equity, it has been held that a person may be chargeable if he makes an untrue statement of fact and has no knowledge that the statement is true, even though he believed it to be true ... or if one has a duty of knowing the truth and makes an un-

Count III of the counterclaims of Pierce and Dynalectric sets forth claims against Nemours based on negligence. Specifically, Pierce and Dynalectric allege that Nemours obstructed and interfered with their efforts to perform their work under the subcontracts with Gilbane in an orderly, efficient, and timely manner by negligently failing to process change estimates and proposals and change order amendments in a timely and proper manner, negligently failing to provide Pierce and Dynalectric with work schedules reflecting actual conditions existing at the Project, and negligently failing to provide Pierce and Dynalectric with updated and revised contract design drawings for the Project.

Nemours challenges Count III on the basis that Pierce and Dynalectric have failed to allege or demonstrate the existence of any legal duty owed them by Nemours. This is without merit since Count III of the amended counterclaims contains clear allegations that Nemours owed Pierce and Dynalectric a duty to exercise reasonable care in (1) processing change estimates and proposals and change order amendments, (2) providing reasonable and accurate schedules, and (3) providing updated and revised contract design drawings. Further, Count III of the counterclaims expressly alleges that Nemours owed Pierce and Dynalectric a duty not to hinder, delay, or interfere with their performance of their subcontractual obligations.

In addition, Nemours asserts that as a matter of law, neither Pierce nor Dynalectric can prove that Nemours owed them any duty of care since at most the acts and omissions set forth in Count III are breaches of duties owed by Nemours to Gilbane under the prime contract, or by Gilbane to Pierce and Dynalectric under the subcontracts. As support for this proposition, Nemours relies on *Harbor Mechanical, Inc. v. Arizona Electric Power Coopera-*

*tive, Inc.,* 496 F.Supp. 681 (D.Ariz.1980) (Arizona law). There, the court granted summary judgment against contractors who had brought claims against the engineering firm retained by the owner of a construction project alleging, *inter alia,* that the engineering firm had negligently drafted plans and specifications for the project and had negligently supervised construction of the project. The court found that the contractors were neither parties to the contract between the engineering firm and the owner nor third-party beneficiaries of that contract. The court then indicated that for a negligence claim to be actionable, there must be the breach of some duty owed by the defendant to the plaintiff. While the court did not foreclose the possibility that the parties to a construction project could create the duties allegedly owed by the engineering firm to the contractors through contract, the court found that the contract between the engineering firm and the owner specifically provided that the engineer's obligations extended only to the owner thereby preventing the court from imposing any duties or obligations on the engineer with respect to the contractors.

The continuing validity of this decision is in serious doubt in light of the *en banc* decision by the Arizona Supreme Court in *Donnelly Construction Co. v. Oberg/Hunt/Gilleland,* 139 Ariz. 184, 677 P.2d 1292 (1984), holding that a contractor could maintain an action against an architectural firm absent privity of contract for negligently providing incorrect design plans and specifications. The court found that the defendant architectural firm was under a duty to use ordinary skill and care in providing plans and specifications which were sufficient and adequate and that this duty extended to both those with whom the firm was in privity and those with whom it was not. Since it was foreseeable that the plaintiff contractor would incur increased

---

true statement ... or if the untrue statement results from one's own forgetfulness.

*In re Brandywine Volkswagen, Ltd.,* 306 A.2d 24, 28 (Del.Super.Ct.), *aff'd,* 312 A.2d 632 (Del. 1973). Therefore, to the extent that Count I of

the counterclaims of Pierce and Dynalectric demands equitable relief, it likewise states a claim upon which relief can be granted in accordance with long established principles of Delaware law.

costs if the plans and specifications were in error, the court ruled that the contractor had stated a cause of action in negligence.

Similarly, in *Berkle & Company Contractors, Inc. v. Providence Hosp.*, 454 So.2d 496 (Ala.1984), the court, *inter alia*, reversed a decision granting summary judgment in favor of the defendant hospital where a subcontractor had brought claims against the hospital and its architect for negligently directing the subcontractor's activities with respect to the construction of an addition to the hospital. The court rejected the hospital's argument that the subcontractor could not enforce the hospital's duties absent privity or third-party beneficiary status, stating:

> [The hospital] misconstrues the basis of duties in negligence actions. A plaintiff may argue that another party owes a duty under a contract upon which the plaintiff reasonably relied.... Alternatively, a plaintiff may argue that another party has duties independent of any contract because that party has acted affirmatively.... [The hospital] can be held liable for negligence injuring third parties, whether or not [the hospital] has a similar duty under contract to some others. The existence of a collateral contract does not negate the obligation imposed in tort to act reasonably.

454 So.2d at 502 (citations omitted).

Although the Delaware case law on this issue is somewhat meager, I am convinced that the Delaware Supreme Court would adopt the position embraced in *Donnelly Construction Co. v. Oberg/Hunt/Gillela-nd, supra*, and *Berkel & Company Contractors, Inc. v. Providence Hosp., supra*, that in a construction dispute, privity of contract or third-party beneficiary status is not a prerequisite in all cases for bringing an action sounding in negligence.

In *Crowell Corp. v. Topkis Construction Co.*, 280 A.2d 730 (Del.Super.Ct.1971), the Delaware Superior Court held that an owner of a building could not bring a negligence action for faulty workmanship against a subcontractor which had assisted in the construction of the building where no "dramatic accident or collapse" had taken place and no person had "suffered physical injury" due to the subcontractor's alleged negligence absent privity of contract. *Id.* at 731–32. The court recognized that the privity requirement had been abandoned in cases involving accidents and/or physical injuries, but refused to extend such a rule to cover situations involving only pecuniary loss relying principally on *Trans World Airlines v. Curtiss-Wright Corp.*, 1 Misc.2d 477, 148 N.Y.S.2d 284 (1955), *aff'd*, 2 A.D.2d 666, 153 N.Y.S.2d 546 (1956), a case involving negligently manufactured airplane engines. While the court conceded that "[f]rom a social viewpoint there is much to be said in favor of the approach taken by [the owner]", *id.* at 731, it found that if the ultimate user of a manufactured item were allowed to sue the manufacturer in negligence "merely because an article with latent defects turned out to be bad when used in 'regular service' without any accident occurring, there would be nothing left of the citadel of privity and not much scope for the law of warranty." *Id.* at 732.

In *Oliver B. Cannon & Sons, Inc. v. Dorr-Oliver, Inc.*, 312 A.2d 322 (Del.Super.Ct.1973), the Delaware Superior Court again confronted the issue of whether an owner could sue a subcontractor for negligent workmanship absent privity of contract. The court indicated that "[w]hile, even under the facts of *Crowell*, there may be some reason to question preservation of the citadel of privity, this opinion does not question the recent authority of *Crowell* in deciding Cannon's motion for summary judgment." *Id.* at 329. Rather, the court expanded *Crowell's* requirement that there be "an accident" in order to avoid the requirement of privity of contract to apply to a situation in which a subcontractor had negligently applied a polyester resin coating to the inside of chemical process tanks which began to deteriorate less than a year later.

> This is a case of physical injury to property and not mere economic loss. It can be reasonably argued that there has been

an accident in the basic sense that there was in fact immediate physical injury to the storage tanks not caused by normal wear and tear.

*Id.* On appeal, the Delaware Supreme Court affirmed the lower court's decision denying summary judgment in favor of the subcontractor on grounds that the owner was a third-party beneficiary of the subcontract. However, the court did not address the *Crowell* issue.[11] *Oliver B. Cannon & Sons, Inc. v. Dorr-Oliver, Inc.*, 336 A.2d 211 (Del.1975).

Shortly thereafter, however, in *Seiler v. Levitz Furniture Co.*, 367 A.2d 999 (Del. 1976), the Delaware Supreme Court upheld the right of a tenant of a shopping center to sue, *inter alia*, the architect of the shopping center for design defects resulting in flood damage to the tenant's store and the contents thereof. The court set forth alternative grounds for its holding as follows:

> Seiler [the architect] argues ... that he was not in privity with Levitz.... *[A]s to privity, the case against Seiler was tried on a negligence basis* (not on a contract theory) *and, to the·extent he relies on the absence of privity in product liability cases, the argument is without merit* in light of our recent decision in *Martin v. Ryder Truck Rental, Inc.*, Del.Supr., 353 A.2d 581 (1976).... In any event, Seiler is accountable to Levitz under third-party beneficiary principles. *Oliver B. Cannon & Son, Inc. v. Dorr-Oliver, Inc.*, Del.Supr. 336 A.2d 211, 215 (1975)....

> For these reasons, we conclude that neither the absence of privity nor the other contentions made by Seiler on this issue are meritorious, and we affirm the Trial Court's conclusion that Levitz has a cause of action against Seiler.[12]

*Id.* at 1006–1007 (emphasis added).

■ Since *Martin v. Ryder Truck Rental, Inc.*, 353 A.2d 581 (Del.1976), clearly indicated that Delaware had abandoned common law privity requirements in the area of products liability cases, I am convinced that the Delaware Supreme Court in *Seiler*, by relying on *Martin*, was likewise indicating an intent to abandon privity as a prerequisite to bringing suit on a negligence theory to recover financial losses suffered in the construction context. Indeed, this was precisely the result in *Seiler*. Consequently, I am not prepared to rule at this time that, as a matter of law, Nemours owed no duty of care to Pierce and Dynalectric concerning the alleged actions and/or omissions by Nemours simply because Nemours does not stand in privity of contract with either Pierce or Dynalectric. Rather, a decision as to whether Nemours owed a duty of care to Pierce and Dynalectric must await the development of a factual record. Therefore, I must deny Nemours' motion to dismiss with respect to Count III of the amended counterclaims.[13]

■ Count IV of the counterclaims advances a claim based on the theory of tortious interference with contractual relations. Pierce and Dynalectric allege, *inter*

**11.** In a footnote, the Supreme Court simply noted that "[o]n remand the parties are free to argue a tortious basis for damages in any way that is not inconsistent with this opinion." *Oliver B. Cannon & Sons, Inc. v. Dorr-Oliver, Inc.*, 336 A.2d 211, 216 n. 6 (Del.1975).

**12.** In *Martin v. Ryder Truck Rental, Inc.*, 353 A.2d 581 (Del.1976), the Delaware Supreme Court held for the first time that under common law principles, a party could be held strictly liable for injuries caused by its defective product absent privity of contract. More specifically, the court ruled that where a bystander had been injured in an accident allegedly resulting from failure of the braking system of a truck rented from the defendant, the defendant could

be held liable without proof of negligence and absent privity of contract.

**13.** The concerns identified by the court in *Crowell Corp. v. Topkis Construction Co., supra*, as to allowing recovery for pecuniary losses suffered from "defects" in mass produced items are apparently viewed by the Delaware Supreme Court as inapplicable in the context of a typical construction project. Owners, architects, engineers, contractors, subcontractors, and suppliers all rely on each other to varying-degrees to ultimately achieve a completed structure. This interdependence differentiates the calculus of foreseeable harm in this context from other contexts such as the· manufacturing of mass produced items.

*alia,* that Nemours intentionally failed to timely and properly process change estimates and proposals and change order amendments, to approve realistic and reasonable work schedules, and to provide updated and revised contract design drawings thereby preventing Pierce and Dynalectric from performing their obligations under the subcontracts with Gilbane and inducing Gilbane to materially breach these subcontracts. Moreover, Pierce and Dynalectric allege that by filing actions against Gilbane, Pierce, and Dynalectric in the Florida state courts in February, 1983, Nemours induced Gilbane to repudiate and anticipatorially breach its subcontracts with Pierce and Dynalectric.

The parties agree that *DeBonaventura v. Nationwide Mutual Insurance Co.,* 419 A.2d 942 (Del.Ch.1980), *aff'd,* 428 A.2d 1151 (Del.1981), correctly sets forth the elements of a cause of action for tortious interference with contractual relations. As Chancellor Marvel stated:

> [I]nterference with an existing contract requires (a) an intent to induce a breach (b) of an existing contract, (c) proximate causation, and (d) damages....

419 A.2d at 947. I find that Count IV of the amended counterclaims of Pierce and Dynalectric sufficiently alleges each of these elements.

Nemours argues that dismissal of Count IV is required because Pierce and Dynalectric have not alleged that Nemours induced Gilbane to breach its subcontracts with Pierce and Dynalectric and have not alleged that the tortious interference was the result of intentional as opposed to negligent conduct. This position is untenable. While Count IV of the amended counterclaims embraces all the prior allegations including the allegations of negligent conduct, it specifically contains allegations that Nemours, *inter alia, intentionally* refused to process change order amendments in a timely manner, to provide updated design drawings, and to approve reasonable work schedules thereby inducing Gilbane to materially breach its subcontracts with Pierce and Dynalectric. Hence, Count IV clearly alleges that the claimed tortious interference with contractual relations was caused by intentional rather than negligent conduct. Moreover, I find that it can be fairly inferred from the allegations of such intentional conduct that Nemours intended to induce a breach of the subcontracts between Gilbane and Pierce and Dynalectric. In addition, Count IV alleges that Nemours knowingly induced Gilbane to repudiate these subcontracts by initiating litigation against Gilbane, Pierce, and Dynalectric in Florida. This likewise clearly supports an inference that Nemours intended to induce a breach of the subcontracts. Therefore, I must deny Nemours' motion to dismiss with respect to Count IV of the amended counterclaims.[14]

---

14. Nemours advances the additional argument that even if Nemours did interfere in some way with Pierce's and Dynalectric's subcontractual relations with Gilbane, such interference was not "improper", since it was simply exercising rights available to it as owner of the Project and/or pursuant to the various contracts. Hence, Pierce and Dynalectric have failed to state actionable claims for tortious interference with contractual relations. I do not agree.

As the Fifth Circuit per Judge Wisdom stated in *Thompson v. Allstate Insurance Co.,* 476 F.2d 746 (5th Cir.1973), a case involving a claim for tortious interference with business relations, "[j]ustification for interference in another's business is an affirmative defense and is no part of the plaintiff's case. It 'is enough to allege and prove the conduct and effect, leaving the defendant to justify if he can'". *Id.* at 748 (quoting *American Well Works Co. v. Layne & Bowler Co.,* 241 U.S. 257, 259, 36 S.Ct. 585, 586,

60 L.Ed. 987 (1916) (Holmes, J.)). Under this standard, the court refused to dismiss plaintiff's complaint for failure to state a claim.

Similarly, in *Leeward Petroleum, Ltd. v. Mene Grande Oil Co.,* 415 F.Supp. 158 (D.Del.1976), Judge Wright rejected a motion to dismiss directed at claims, *inter alia,* alleging tortious interference with contractual relations where the defendant asserted that its acts were privileged and therefore could not constitute tortious interference. The court commented as follows:

> This Court cannot now accede as a matter of law that such a privilege, if it exists, applies here.... [B]efore the court could rule on such a question, it would require a factual showing on the background of the transaction, and the respective interests of all the parties. *Such a factual showing must await summary judgment or trial.*

*Id.* at 164 (emphasis added).

Count V of the amended counterclaims of Pierce and Dynalectric sets forth a claim against Nemours to recover the value of uncompensated work performed by Pierce and Dynalectric on the basis of the doctrine of quantum meruit. Pierce and Dynalectric reaver the prior allegations of the amended counterclaims and assert that Nemours' alleged actions so substantially interfered with Pierce's and Dynalectric's subcontractual duties that Pierce and Dynalectric are entitled to treat their subcontracts with Gilbane as repudiated or "cardinally" breached. Pierce and Dynalectric then claim that since Nemours has received and retained the benefits of the materials and labor provided by Pierce and Dynalectric under their subcontracts for which Pierce and Dynalectric have not been fully compensated, Nemours has been unjustly enriched and should be required to pay Pierce and Dynalectric for the benefits thus conferred.

Nemours contends that Count V of the counterclaims fails to state a claim upon which relief can be granted because there is no right to bring an action based on quasi-contract principles where an express contract governs. More specifically, Nemours argues that the fact that Pierce and Dynalectric and Gilbane expressly contracted for the provision of materials and services which Pierce and Dynalectric now claim unjustly enriched Nemours bars any recovery against Nemours on a quantum meruit theory since Pierce and Dynalectric are limited to seeking relief from Gilbane pursuant to their subcontracts.

I am convinced that the law of Delaware precludes granting relief under Count V given the facts which have been alleged.[15] Stripped to its bare essentials, Count V alleges that Pierce and Dynalectric have conferred upon Nemours a benefit for which they have not been fully compensated and that it would be inequitable to allow Nemours to retain this benefit without compensating Pierce and Dynalectric. There are no allegations that Pierce and Dynalectric will not ultimately be compensated by Gilbane or that Nemours has failed to pay Gilbane for the services rendered by Pierce and Dynalectric under the subcontracts.

In *Cohen v. Delmar Drive-In Theatre, Inc.*, 45 Del. 427, 84 A.2d 597 (Del.Super. Ct.1951), the court held that "[a] materialman who, as subcontractor, furnishes materials upon the order and credit of a general contractor or another sub-contractor, cannot recover in an action *in personam* against the owner upon the basis of implied contract arising from the receipt and acceptance of the benefit of the materials furnished." 84 A.2d at 598. The court indicated that there was no privity of contract between the plaintiff subcontractor and the defendant owner and found that a judgment in favor of the subcontractor was thereby precluded. *Id.*

*Cohen v. Delmar Drive-In Theatre, Inc.*, seems to follow the general rule set forth in *Board of Public Education v. Aetna Casualty & Surety Co.*, 34 Del. 355, 152 A. 600 (Del.Super.Ct.1930). There, the court found that by the terms of a surety bond entered into between the defendant surety firm and the prime contractor, a supplier to a subcontractor properly stated a cause of action under the bond for payment for materials supplied to the subcontractor. However, of importance to the case at bar, the court also commented as follows:

> We take it to be the established law that where a person employs another to do work for him, he is not liable to an action

Nemours' argument that it was somehow justified in allegedly interfering with the subcontractual relations between Gilbane, Pierce, and Dynalectric necessarily depends on facts not in the record before me on these motions to dismiss and, as such, cannot be decided at this time. Moreover, whether or not Nemours' conduct was justified is in the nature of a defense. It is sufficient at this stage of the proceedings that Pierce and Dynalectric have properly stated claims upon which relief can be granted. With respect to Count IV of the amended counterclaims, I have so found.

**15.** As with the negligence issue, the parties have provided little assistance with respect to this issue, citing absolutely no Delaware state court decisions.

for services performed in the work by a third person solely on behalf of such second person nor for materials furnished by such third person to such second person under a contract between them alone. There is no privity between the first party and third—the contract being solely between the sub-contractor and laborer or material man as the case may be.

152 A. at 603.

More recently, in *Chrysler Corp. v. Airtemp Corp.*, 426 A.2d 845 (Del.Super.Ct. 1980), the court addressed whether a party to a contract could recover from a third-party beneficiary to that contract the value of services rendered. Specifically, Chrysler entered into a contract with Fedders Corporation whereby Fedders agreed to purchase most of the assets of Chrysler's Airtemp Division. To effectuate this transfer, Fedders created Airtemps (the defendant), a wholly owned subsidiary to which the assets in question were transferred. Fedders also agreed to pay Chrysler for providing certain services to Airtemps for a period following the transfer. After allegedly not receiving payment for these services, Chrysler sued Airtemps on, *inter alia,* a quantum meruit theory. The court ruled that Airtemps, the third-party beneficiary of the contract between Chrysler and Fedders, could not be held liable "on the theory of quantum meruit or implied contract, at least in the absence of inability to recover under the underlying contract." *Id.* at 854.[16]

■ In the case at bar, Pierce and Dynalectric seek a judgment in their favor against Nemours, the third-party beneficiary of their subcontracts with Gilbane. While Pierce and Dynalectric allege that they have not been fully compensated for their services and materials, and that Nemours has retained the benefits thereof, there is no allegation that they will be unable to recover full compensation for

these services and materials from Gilbane. Moreover, Count V of the amended counterclaims is devoid of any factual allegations from which one could conclude that Nemours has been *unjustly* enriched. Therefore, Nemours' motion to dismiss with respect to Count V of the amended counterclaims will be granted.

### CONCLUSION

For the foregoing reasons, I conclude that this Court has subject matter jurisdiction over Dynalectric's amended counterclaim against Nemours, that Nemours' motions to dismiss Count V of the amended counterclaims of Pierce and Dynalectric should be granted and that its motions to dismiss Counts I through IV of these counterclaims should be denied.

---

**16.** The court likewise rejected Chrysler's argument that it was entitled to recovery from Airtemps on the basis of restitution, finding that the benefits retained by Airtemps did not consti-

tute unjust enrichment, since, as the third party beneficiary to the contract, Airtemps was entitled to receive such services. *Id.* at 854–55.