## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ALPHA CONTRACTING SERVICES, INC., | : | C.A. No. K18C-08-034 NEP |
| | : | In and for Kent County |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| PROFESSIONAL RETAIL SERVICES, INC., and ANN, INC. | : | |
| | : | |
| Defendants. | : | |

## ORDER

Submitted: December 21, 2018
Decided: January 9, 2019

Before the Court is Defendant Ann, Inc.'s (hereinafter "Ann") Motion to Dismiss and Plaintiff Alpha Contracting Services, LLC's (hereinafter "Alpha") response. Alpha filed its Complaint on August 17, 2018, against Ann and Professional Retail Services (hereinafter "PRS"). In its Complaint, Alpha asserted four counts: (1) breach of contract; (2) unjust enrichment; (3) *quantum meruit*; and (4) violation of 6 *Del. C.* § 3501 *et. seq.* Ann's motion requests dismissal of all Counts asserted in the Complaint. For the reasons set forth below, Defendant Ann's motion is **DENIED** in part and **GRANTED** in part.

1

## A.    Factual Background and Procedural History

The facts recited are those as alleged in Plaintiff's Complaint.[1] PRS, as prime contractor for Ann, entered into a contract on April 4, 2018, with Alpha (hereinafter "the Contract") for renovations at the Ann Taylor Loft Store (hereinafter "the Store") located in the Tanger Outlets in Rehoboth Beach, Delaware. PRS was hired by Ann to act as general contractor and oversee the work performed at the Store. The scope of the work included furnishing drywall, paint, trim, lumber, mud, hardware, ceiling tiles, equipment, rentals and labor for restoration. The original contract amount was to be between $70,000.00 and $80,000.00; however, PRS approved changes that were in addition to the contracted scope of work in the amount of $4,070.00. Thus, the agreed contract price between Alpha and PRS was $84,070.00. The Contract provided for installment payments to be made upon certain dates and upon completion of certain work. Alpha alleges that it completed all of the contracted work in a timely manner but has been paid only $40,000.00.

On April 19, 2018, Alpha emailed Kathleen Larmour at PRS to inquire as to the payment status of the remaining $44,070.00 owed. Ms. Larmour responded via email on April 20, 2018, and stated that she disagreed with the project completion percentage and would contact Alpha within a few weeks. On April 25, 2018, Alpha sent a final invoice via first class mail to PRS for $44,070.00. PRS did not pay this invoice, prompting Alpha to bring the instant suit.

## B.    Standard of Review

On a motion to dismiss, the moving party bears the burden of demonstrating that "under no set of facts which could be proven in support of its [complaint] would

---

[1] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002) (on a motion to dismiss "all well-pleaded factual allegations are accepted as true").

the [plaintiff] be entitled to relief."[2] Upon this Court's review of a motion to dismiss, "(i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are well-pleaded if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and (iv) dismissal is inappropriate unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof."[3]

## C. Discussion

### I. Count I: Breach of Contract Claim

The parties agree that Alpha seeks no relief against Ann under Count I. Therefore, Ann's motion to dismiss is moot as to Count I.

### II. Counts II and III: Unjust Enrichment and *Quantum Meruit* Claims

As to Counts II and III of its Complaint, Alpha alleges that Ann was unjustly enriched under the Contract and that Alpha may recover under a theory of *quantum meruit*. The Court will address the unjust enrichment claim first, followed by the *quantum meruit* claim.

Pursuant to the Restatement of Restitution, a person who has been unjustly enriched at the expense of another must make restitution to the other person.[4] However, "[a] person [*i.e., Alpha*] who has conferred a benefit upon another [*i.e., Ann*] as the performance of a contract with a third person [*i.e., PRS*] is not entitled to restitution from the other merely because of the failure of performance by the third

---

[2] *Daisy Constr. Co. v. W.B. Venables & Sons, Inc.*, 2000 WL 145818, at *1 (Del. Super. Jan. 14, 2000).

[3] *Savor*, 812 A.2d at 896–97.

[4] Restatement of Restitution § 1 (1988).

person."[5] In order to recover under a theory of unjust enrichment, the plaintiff must prove five elements: "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and the impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law."[6]

Ann asserts two primary arguments against the viability of Alpha's unjust enrichment claim. First, Ann argues that there is already a remedy at law for Alpha, as it may sue PRS, the other party to the Contract, for damages. Ann asserts that the Contract set forth the work that Alpha was to perform in exchange for money owed by PRS. Because this Contract was entered into between PRS and Alpha, Ann argues that Alpha's breach of contract claim against PRS is a sufficient remedy at law. Second, Ann asserts that it was not unjustly enriched to the detriment of Alpha, particularly as it paid PRS for the work performed at the Store.

In Delaware, it is well established that a subcontractor is barred from recovery under an unjust enrichment theory where an owner has made *full payment* to a general contractor.[7] "When that occurs, a subcontractor who is not paid by the general contractor cannot complain about the owner's benefit. The benefit was purchased, and, therefore, its receipt is just."[8] However, this is not the case where an owner has not paid the general contractor. Rather, this Court has permitted recovery for a subcontractor under an unjust enrichment theory where the general contractor was not paid or was not paid in full.[9] In order for a subcontractor to

---

[5] *J.O.B. Const. Co. v. Jennings & Churella Services, Inc.*, 2001 WL 985106, at *4 (Del. Super. Aug. 9, 2001) (quoting Restatement of Restitution § 110); *Chrysler Corp. v. Airtemp Corp.*, 426 A.2d 845, 855 (Del. Super. 1980).

[6] *Total Care Physicians, P.A. v. O'Hara*, 798 A.2d 1043, 1056 (Del. Super. 2001).

[7] *J.O.B.*, 2001 WL 985106, at *4 (emphasis added); *see also Cohen v. Delmar Drive-In Theater, Inc.*, 84 A.2d 597, 98 (Del. Super. 1951).

[8] *J.O.B.*, 2001 WL 985106, at *4.

[9] *Id.* (citing *Builders Supply of Delmarva, Inc. v. Manbeck*, 1998 WL 442845, at *3 (Del. Super. June 23, 1998); *Galvagna v. Marty Miller Construction, Inc.*, 1997 WL 720463, at *3-4 (Del. Super. Sept. 19, 1997)).

recover in that instance, it must demonstrate an inability to collect under the subcontract combined with the owner's failure to pay the general contractor.[10]

Here, Alpha argues that whether there is an adequate remedy at law will depend on PRS's defense theories. Specifically, Alpha has pointed to PRS's Answer to the Complaint and Counterclaim, which alleges that Ann back-charged and owes PRS $58,582.50.[11] The Court agrees with Alpha that it cannot force PRS to bring an action against Ann for this back-charged amount in order to recover its $44,070.00 owed. If PRS's assertion is correct, and if Ann is dismissed from this action, Alpha could be left without a remedy, and Ann may be unjustly enriched.

The evidence presented by Alpha clearly demonstrates that it did not intend to provide its work gratuitously. Rather, the Contract demonstrates an intent to be paid for the work performed. The sufficiency and quality of the work performed remains a question for the jury, as does whether Ann was unjustly enriched to the impoverishment of Alpha. Accepting all well-pleaded factual allegations as true, the Court finds that Alpha has sufficiently pled a claim for unjust enrichment so as to survive a motion to dismiss.

The Court next turns to Alpha's *quantum meruit* claim. *Quantum meruit* "…is a quasi-contractual remedy by which a plaintiff, in the absence of an express agreement, can recover the reasonable value of the materials or services it rendered to the defendant."[12]

As a general rule, Delaware courts will not entertain a *quantum meruit* claim by a subcontractor against an owner unless the subcontractor is unable to recover on

---

[10] *Id.*

[11] Pursuant to Delaware Rule of Evidence 202(d)(1)(C), this court may take judicial notice of the pleadings in this case without converting the motion to one for summary judgment.

[12] *Middle States Drywall, Inc. v. DMS Properties-First, Inc., et al.,* 1996 WL 453418, at *10 (Del. Super. May 18, 1996) (quoting *Marta v. Nepa,* 385 A.2d 727, 729 (Del. 1978)).

its contract with the general contractor.[13] Furthermore, "[g]enerally, *quantum meruit* is considered only if the relationship of the parties is not governed by an express contract."[14] However, a party may recover under a *quantum meruit* theory, even with an express contract, where the performing party establishes "that it performed services with an expectation that the receiving party would pay for them, and that the services were performed under circumstances which should have put the recipient on notice that the performing party expected to be paid by the recipient."[15]

In *Galvagna v. Marty Miller Construction, Inc.*,[16] this Court allowed a subcontractor's claim against an owner based upon *quantum meruit*, or unjust enrichment, to survive a motion for summary judgment. In so holding, the Court found persuasive the fact that the subcontractor and general contractor both alleged that the owner had not paid them for the services and material that the plaintiff had supplied and that the owners did not dispute that allegation.[17] Additionally, the Court found that there was an issue of material fact regarding whether the plaintiff could recover from the general contractor.

In *Galvagna*, the general contractor contracted with the owners of a building to build a commercial structure. After the owners and general contractor entered

---

[13] *Daystar Sills, Inc. v. Anchor Investments, Inc.*, 2007 WL 1098129, at *5 (Del. Super. Apr. 12, 2007); *see also Gilbane Bldg. Co. v. Nemours Foundation*, 606 F. Supp. 995, 1007 (D. Del. 1985); *Chrysler*, 426 A.2d at 850.

[14] *Daystar Sills*, 2007 WL 1098129, at *4; *see also Chrysler*, 426 A.2d at 854 ("If it is determined that the relationship of the parties and the services involved in this claim are the subject of an express contract, the terms of that contract control and there is no occasion to pursue the theory of quantum meruit or contract implied in law."). Here, Alpha has asserted a *quantum meruit* claim against both PRS and Ann.

[15] *R.E. Haight & Associates v. W.B. Venables & Sons*, 1996 WL 658969, at *4 (Del. Super. Oct. 30, 1996) (citing *Construction Systems Group v. Council of Sea Colony, Phase I*, 670 A.2d 1337 (TABLE) (Del. 1995)); *see also Griffin Dewatering Corp. v. B.W. Knox Const. Corp.*, 2001 WL 541476, at *7 (Del. Super. May 14, 2001).

[16] *Galvagna, supra* note 9.

[17] *Id.* at *4.

into their contract, the plaintiff, a subcontractor, and the general contractor entered into an oral contract providing that the plaintiff was to supply the labor and materials for the structure. The plaintiff alleged that he performed the requested work but was not paid by the general contractor. Moreover, the plaintiff alleged, and the general contractor agreed, that the owners did not pay the general contractor or plaintiff the sums allegedly due.[18] In response, the owners argued that they did not have a contract with the plaintiff and that the plaintiff should seek to recover the amount owed from the general contractor. The Court found the owner's argument unconvincing and ultimately held that it was "reasonable to conclude that the Owners may be unjustly enriched by the labor and materials which Plaintiff provided" and that "Plaintiff is entitled to pursue against the Owners the *in personam* claim based upon *quantum meruit*."[19]

Here, it is true that Alpha expected to be compensated by PRS, not Ann, under the terms of the Contract. However, Alpha also expected that Ann would pay PRS for the services performed and that PRS, in turn, would pay Alpha. As mentioned above, PRS has alleged that Ann withheld $58,582.50 from PRS in the form of a back-charge. Presumably, PRS anticipated paying Alpha the $44,070.00 allegedly

---

[18] *Id.* at *1 ("Builders [the general contractor] has not paid Plaintiff. Furthermore, the owners have not paid either Builders or Plaintiff the sums allegedly due and owing. The principal of Builders, Marty Miller, agrees that Builders owes Plaintiff the sums alleged to be due and owing. However, he alleges that the Owners have not paid him, and that is the reason why he has not paid Plaintiff.").

[19] *Id.* at *4. *Cf. Chrysler, supra* note 5 (defendant, third-party beneficiary under agreement between plaintiff and corporation, was not liable under theory of *quantum meruit* absent showing that plaintiff was unable to recover under underlying or express contract); *Gilbane, supra* note 13 (subcontractors were unable to recover under *quantum meruit* claim against owner absent showing that all other subordinate payment sources had been exhausted). In *Gilbane*, the Court found that the subcontractors had not alleged that they would not ultimately be compensated by the contractor or that the owner had failed to pay the contractor for the services rendered by the subcontractors. Rather, while the two subcontractors had alleged that they had not been fully compensated for the services performed under the contract, "...there [was] no allegation that they [would] be unable to recover full compensation for these services and materials from [the general contractor]." *Gilbane*, 606 F. Supp. at 1008.

owed it by Ann. The Court thus finds that Alpha may be unable to recover from PRS under the express contract. Moreover, the Court finds that Ann may be unjustly enriched, assuming that PRS's allegation is true that it has not been paid. Consequently, the Court finds that Alpha may pursue its claim against Ann based upon *quantum meruit*.

### III.    Count IV: Claim Under 6 *Del. C.* § 3501 *et seq.*

Lastly, Ann moves to dismiss Alpha's claim under 6 *Del. C.* § 3501 *et. seq.*, which governs "Building Construction Payments" between "owners" and "contractors" and between "contractors" and "subcontractors." Ann argues that it is an "owner"[20] as defined in Section 3501 and that as an "owner," it is not liable to Alpha under the statute. Rather, Ann avers that it hired PRS as a "contractor,"[21] which is then responsible for paying Alpha, the "subcontractor."[22] Thus, Ann argues that this statute is inapplicable to this proceeding, as there is no provision that makes "owners" liable for payments by "contractors" to "subcontractors." The Court agrees and holds that Alpha may not make out a claim against Ann under this statute. Therefore, Ann's Motion is granted as to Count IV.

Section 3507(a) states that "[t]he owner shall pay the contractor strictly in accordance with the terms of the contract."[23] Additionally, Section 3507(d) states that "[i]f subcontractor payment terms are not specified in the contract between the

---

[20] "Owner" is defined as "a person who has an interest in the lands or premises upon which a contractor has undertaken to erect, construct, complete, alter or repair any building or addition to a building." 6 *Del. C.* § 3501(4).

[21] "Contractor" is defined as including, but not limited to "an architect, engineer, real estate broker or agent, subcontractor or other person, who enters into any contract with another person to furnish labor and/or materials in connection with the erection, construction, completion, alteration or repair of any building...." 6 *Del. C.* § 3501(2).

[22] "Subcontractor" is defined as "a person who enters into a contract to furnish labor and/or materials to a contractor." 6 *Del. C.* § 3501(6).

[23] 6 *Del. C.* § 3507(a).

8

owner and a general or prime contractor, or in the contract between the general or prime contractor and a subcontractor,... a general contractor, prime contractor or subcontractor shall pay all undisputed amounts owed to its subcontractors...."[24]

Alpha asserts that Section 3507 must be read as a whole to require an "owner" to pay the "contractor" who, in turn, is then required to pay the "subcontractor" under Section 3507(d). While the statute does not explicitly provide a remedy for a "subcontractor" against an "owner," Alpha asks this Court to imply a private right of action and, thus, create pass-through responsibility to an "owner" where the owner has not made payment to the general contractor.

In support of its argument, Alpha cites to *State v. Pierson*,[25] which discussed *Del. C.* 1935, § 3652, the predecessor statute to 6 *Del. C.* § 3501 *et seq.* This Court in *Pierson* found that the purpose behind Section 3652 is "(1) to protect the owner against the claims of sub-contractors where the owner has made payment to the general contractor; and (2) to give sub-contractors protection against misappropriation of funds by general contractors."[26] Alpha argues, in essence, that a third purpose may be read into the current statute, that is, to protect a subcontractor where the owner has not made payment to the general contractor by providing a cause of action by the subcontractor against the owner. Alpha has not cited to any case law or authority for this proposition, and the Court finds this argument unconvincing.

In short, the Court finds that the statute is inapplicable to this proceeding, as there is no provision that makes "owners" liable for payments by "contractors" to "subcontractors." Moreover, the Court sees nothing to indicate an intent on the part of the General Assembly to create a private right of action under the statute for

---

[24] 6 *Del. C.* § 3507(d).
[25] *State v. Pierson*, 86 A.2d 559, 561 (Del. Super. 1952).
[26] *Id.* (citing *State v. Tabasso Homes*, 28 A.2d 248, 253 (Del. Super. 1942)).

subcontractors against an owner. A diligent review of Delaware case law and authority similarly provides no elucidation as to the factual or legal basis for which Alpha is seeking relief under this statute. Therefore, dismissal of this claim is appropriate.

**WHEREFORE**, for the foregoing reasons, Defendant Ann's Motion to Dismiss is **DENIED** as to Counts II and III of the Complaint, and **GRANTED** as to Count IV.[27]

**IT IS SO ORDERED.**

_____/s/ Noel Eason Primos_____
Judge

NEP/wjs
*Sent via File & ServeXpress and U.S. Mail*
oc:    Prothonotary
       Counsel of Record
       file

---

[27] The Court notes that PRS filed a response indicating its intention to "join" Ann's Motion, but provided no other argument or basis for dismissal. The Court further notes that PRS presented no argument at the hearing held on December 21, 2018. Accordingly, all of Alpha's claims against PRS will remain, including Alpha's claims against PRS set forth in Count IV.